UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
LISA PRINCE,

                                Plaintiff,

   -against-

TIVOLI BI LLC,
STELLAR MANAGEMENT,
CULLEN & ASSOCIATES, P.C., and
KEVIN CULLEN,

                               Defendants.
-------------------------------------------------------------x

Civil Action No. 25-cv-3679

**COMPLAINT AND DEMAND FOR JURY TRIAL**

     Plaintiff, by her attorneys at Brooklyn Legal Services, for her complaint against Defendants Cullen & Associates, P.C., a law firm, and Kevin Cullen, the principal of the firm (collectively "Attorney Defendants"), for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and New York Judiciary Law § 487; against Attorney Defendants and Defendants Tivoli BI LLC and Stellar Management (collectively "Landlord Defendants"), for violating New York General Business Law § 349 and committing negligence and gross negligence; and against the Landlord Defendants for violating Administrative Code § 27-2004(a)(48)(d) and (g) and committing harassment, alleges as follows:

## PRELIMINARY STATEMENT

     1.     For nearly ten years, Kevin Cullen and his firm, Cullen & Associates, have filed multiple frivolous nonpayment cases in  Kings County Housing Court against Lisa Prince ("Ms. Prince") in attempt to evict her from her home, culminating in their most recent 2024 case against her, a summary eviction action for nonpayment of rent, which sought thousands of dollars from Ms. Prince that indisputably were not owed.

     2.     New York Housing Law is clear: a landlord may not collect rental arrears via a

summary nonpayment case where these arrears did not become due pursuant to a lease agreement. *See 615 Nostrand Ave. Corp. v. Roach*, 15 Misc. 3d 1, 4, 832 N.Y.S.2d 379, 382 (App. Term 2006) ("It is elementary that a nonpayment proceeding must be predicated on a default in rent owed 'pursuant to the agreement under which the premises are held.") (citing RPAPL 711[2])).

3.      In a situation where there is no lease agreement between the parties, a landlord may pursue a plenary action against apartment residents for the fair value of use and occupancy of the apartment.  But where, as in this case, the landlord has brazenly ignored an order to provide a lease to the apartment occupants, such a case would not lie since the good faith component of such an equitable claim is lacking. *See 1781 Riverside LLC v Hidalgo*, 209 AD3d 418, 419 (1st Dept 2022) (since landlord failed to provide a lease agreement pursuant to the parties' stipulation, a court order, and statutory requirements, it could not  maintain an equitable claim for use and occupancy, having "failed to allege facts that would establish plaintiff's good faith - a necessary allegation to support an equitable claim").

4.      For years, Defendants have harassed Ms. Prince by issuing her rental ledgers and invoices demanding sums that it had no legal basis to demand.

5.      Defendants' campaign against Ms. Prince began in 2016, when Attorney Defendants, working on behalf of Tivoli Bi LLC, filed two nonpayment cases against Ms. Prince and her nephew and ward, Christian Lee.  The first of these cases was withdrawn and voluntarily discontinued by Defendants.  The second was dismissed on summary judgment by Hon. Bruce Scheckowitz, who found that Defendants were "ignoring both the laws and directives of HPD to offer Respondent a lease, so that it can attempt to collect an obscene amount of rent arrears from . . . low-income individual[s], to which it is not entitled, or evict [them]." **Exhibit A** (Scheckowitz Order, dated June 30, 2017).

6.      Though this order precluded Defendants from bringing additional nonpayment cases against Ms. Prince, it did not stop Defendants from continuing to assess an improper balance, to seek her eviction via other types of cases, or to refuse to offer her a lease—even when ordered to do so by a court or agency.  It was not until September 2023, when, after much advocacy, Ms. Prince was able to place a Section 8 voucher with Landlord Defendants, that the Landlord Defendants finally recognized her lawful tenancy. With great relief, Ms. Prince began paying her share of the rent, too, believing her decade-long battle for her home was finally over.  Between September 2023 and May 2024, Ms. Prince made every single rental payment in full and on-time— a fact of which Defendants were well aware.

7.      Still, Attorney Defendants initiated another baseless nonpayment lawsuit against Ms. Prince on July 3, 2024, falsely claiming that Ms. Prince had not paid her rent for these months and seeking her eviction.  This action—and its accompanying threat of eviction—loomed over Ms. Prince for *eleven months*, until Defendants ultimately stipulated to discontinue the case with prejudice, acknowledging that Ms. Prince had paid the rent sought in the petition prior to the initiation of the case and that the petition amount was never due and owing.

8.      Ms. Prince now brings this action to recover against Defendants for the emotional, physical, and financial harm she suffered as a result of this latest attempt to collect fictitious debt or cause her eviction via the recently-discontinued nonpayment case.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d), and under 28 U.S.C. § 1331.

10.     This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative fact with the federal claim and are so

related to the federal claim as to form part of the case or controversy under Article III of the United States Constitution.

11.    Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

12.    Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within the Eastern District of New York.

## PARTIES

13.    Plaintiff Lisa Prince is a natural person residing at 49-57 Crown Street, Apartment 28L, Brooklyn, New York 11225.

14.    Defendant Tivoli Bi LLC (hereinafter "Tivoli") is limited liability corporation organized under the law of the State of New York with its headquarters and its principal place of business at 44 West 28th Street, 6th Floor, New York, New York.

15.    Tivoli is and was at all relevant times the owner of the building where Ms. Prince lives, and rents her apartment to her.  It is the named petitioner in several judicial nonpayment proceedings and administrative proceedings commenced against Ms. Prince.

16.    Defendant Stellar Management is a limited liability corporation organized under the law of the State of New York, with its headquarters and its principal place of business at 44 West 28th Street, 6th Floor, New York, New York.

17.    Stellar Management is and was at all relevant times the property management company responsible for the day-to-day operations at 49-47 Crown Street, including but not limited to sending out rent invoices to tenants like Ms. Prince.

18.    Defendant Cullen & Associates, P.C. (hereinafter "Cullen & Associates") is a law firm organized under the laws of the State of New York, with its principal place of business at 299

4

Broadway, Suite 1510, New York, New York. Cullen & Associates engages in business in New York State; this suit arises out of that business.

19.     Upon information and belief, Cullen & Associates primarily specializes in landlord-tenant law.

20.     Defendant Kevin Cullen is an attorney at law duly admitted to practice in the State of New York, with a principal place of business at 299 Broadway, Suite 1510, New York, New York. Mr. Cullen is the owner and principal of Cullen & Associates.

21.     Cullen & Associates and Mr. Cullen (collectively hereinafter "Attorney Defendants") were acting as the agents of Defendants Tivoli and Stellar Management (hereinafter collectively "Landlord Defendants") in their litigation and other attempts to collect the putative debt. The Attorney Defendants were acting in the course and scope of their employment. The Attorney Defendants were the freely chosen counsel of the Landlord Defendants. Therefore, the Landlord Defendants are jointly and severally liable for the conduct of the Attorney Defendants.

## FACTS

### *Ms. Prince's Residency*

22.     Ms. Prince has lived in apartment 28L at 49-57 Crown Street in Brooklyn, New York, a Mitchell-Lama housing development, since 2014.

23.     Ms. Prince's sister, Joyce Lee, had lived in the unit for nearly forty years—from 1975 until her death in January 2014. Shortly after Ms. Lee's death, Ms. Prince moved into the unit to care for Ms. Lee's adult son, Christian Lee, who has a mental disability and had lived in apartment 28L for his entire life. Ms. Prince was appointed Mr. Lee's guardian pursuant to Article 81 of the Mental Hygiene Law.

### *Landlord Defendants' Efforts to Evict*

24.     Mr. Lee unquestionably had succession rights to the apartment under New York City regulations governing Mitchell Lama housing, since he co-resided with his mother Joyce Lee until her death, and he was a recognized member of the household. Since he lacked capacity, he could not execute a lease on his own behalf.

25.     In or around February 2014, soon after moving to the apartment, Ms. Prince requested a lease recognizing Mr. Lee as successor tenant of record, and Ms. Prince as his guardian.[1]

26.     For nearly ten years, Defendants Tivoli and Stellar Management refused to offer a lease to Mr. Lee and Ms. Prince.

27.     Between 2016 and 2024, Landlord Defendants, represented by Defendant Cullen & Associates, initiated several proceedings against Mr. Lee and Ms. Prince with the goal of evicting them.

28.     On or about March 14, 2016, Defendant Tivoli, represented by Defendant Cullen & Associates, commenced a nonpayment eviction proceeding captioned LT-01576-16/KI, *Tivoli Bi LLC v. Christian Lee.* Therein, Defendants asserted falsely that Mr. Lee was tenant of the premises "pursuant to a WRITTEN lease agreement wherein respondents promised to pay...$1,623 each month," and asserted that $42,198.00 were owed as rental arrears.

29.     Although Landlord Defendants were aware that Mr. Lee was incapacitated, and that Ms. Prince was living in the apartment as his guardian, they did not name her as a respondent to the action.  Brooklyn Legal Services appeared in the action for Ms. Prince as Mr. Lee's guardian,

---

[1] The Supreme Court, Kings County appointed Ms. Prince to be Mr. Lee's Article 81 guardian; *see In the Matter of Lisa Prince v. Christian Lee*, Index Number 100005/2015 (Sup. Ct., Kings Co.) ).

and moved for leave to interpose an amended answer on behalf of Mr. Lee.  The proposed amended answer asserted various defenses, including that there was no lease agreement between the parties to support the action.  Instead of responding to the motion, Defendant Tivoli by its counsel Defendant Cullen & Associates, decided not to pursue the proceeding further, and  the proceeding was discontinued by two-party stipulation dated July 26, 2016.

30.    On March 9, 2016, Tivoli, again represented by Cullen & Associates, brought an administrative proceeding against Mr. Lee and Ms. Prince pursuant to City rules governing Mitchell-Lama apartments, seeking a certificate of eviction from the Department of Housing Preservation and Development (HPD) based on alleged lease violations by Mr. Lee.  Brooklyn Legal Services represented Ms. Prince, and raised defenses including the frivolous nature of the proceeding in light of Defendants' refusal to provide a lease while at the same time arguing that a lease agreement had been violated.

31.    On February 22, 2017, the HPD Administrative Hearing Officer agreed that there was no evidence that Mr. Lee had a lease, and marked the proceeding off the calendar.

32.    Meanwhile, some months prior, on December 26, 2016, Tivoli, represented by Cullen & Associates, had brought another nonpayment proceeding in Kings County Housing Court, captioned *Tivoli Bi LLC v. Christian Lee and Lisa Prince* (LT-51168/2017), seeking $56,805.00 in rental arrears, again asserting therein that the case was based on a written lease agreement between the parties. (Ex. A, Scheckowitz Decision, dated December 6, 2017, p 1.) Ms. Prince, represented by Brooklyn Legal Services, moved for relief including summary judgment. (*Id*., p. 2.)

33.    On December 6, 2017, the Housing Court dismissed the nonpayment case in light of the absence of a written lease agreement. (*Id*. at 8.) The court held that Tivoli was "precluded

from seeking rental arrears from [Ms. Prince and Mr. Lee] since it failed to provide [them] with a lease after multiple requests for a lease were made." (*Id*.) Further, the Housing Court fined Landlord Defendants $1,500,00, finding that it had harassed Ms. Prince and her nephew by "continu[ing] to refuse to provide [them] with a valid lease." (*Id.* at 10.) "Compounded with the fact that [Mr. Lee] is an individual incapable of adequately defending his rights," the Housing Court noted, "such behavior by [Tivoli] is beyond admonition." (*Id.)*

34.     In further proceedings before HPD, the agency determined in 2019 that Mr. Lee had succession rights to the apartment and was entitled to a lease in his name. Later, Defendants again sought HPD's authorization to evict Ms. Prince—this time on the asserted ground that Mr. Lee no longer lived in the apartment. In proceedings before an HPD administrative officer, the parties agreed that Defendants would undertake household income certification for Ms. Prince and Christian Lee, that they would offer Ms. Prince a lease agreement upon her provision of appropriate documents. Despite Ms. Prince having promptly provided the requested documents— which Ms. Prince was at all times willing to provide—the Landlord Defendants refused to provide the agreed-upon lease agreement.

35.     On June 18, 2020, resolving the then-pending administrative proceeding, HPD Administrative Officer Julie Walpert directed that in light of Mr. Lee's having surrendered occupancy of the apartment, "Lisa Prince is to be named the tenant of the subject apartment and granted a lease forthwith."

### *September 2023 Section 8 Acceptance & Rent Payments*

36.     In September 2023, Ms. Prince was approved for a Section 8 voucher by HPD, who determined that her share of the monthly rent would be $658, and the rest would be paid by Section 8.

37.     Upon information and belief, Landlord Defendants signed a Housing Assistance Payment contract with HPD in order to receive Section 8 subsidy payments made on Ms. Prince's behalf.  However, the Landlord Defendants persisted in refusing to provide her with a lease.

### *July 2024 Nonpayment Case*

38.     On July 3, 2024, Defendants commenced the nonpayment proceeding that gives rise to Ms. Prince's FDCPA claims in the within action.  The petition filed in that proceeding, captioned *Tivoli Bi LLC v. Lisa Prince*, LT-320098-24/KI, alleges that Ms. Prince owed $5,483.00 in unpaid rent, for September 2023 through May 2024.  **Exhibit B** (Petition), ¶ 6.

39.     The petition was executed by Defendant Kevin Cullen, representing to the court and to Ms. Prince that he had performed a meaningful attorney review of the petition. *Id*., p. 2.

40.     He also affirmed "under penalty of perjury…that he has read the foregoing petition and knows the contents thereof; that the same are true to his knowledge except as to matters stated to be upon information and belief; and to those matters he believes them to be true." *Id*.

41.     The petition's allegations about the basis for Defendants' efforts to collect money from Ms. Prince under threat of eviction are false.  Since September 2023, Ms. Prince had paid her share of the rent on time each month—as Landlord Defendants' own records showed.  *See* **Exhibit C**, Rent Receipts; **Exhibit D**, Landlord Defendants' Rent Breakdown.

42.     Furthermore, in this case, Defendants sought to collect arrears from Ms. Prince, on threat of eviction, for a time period that did not correspond to a written lease agreement between the parties.  The Landlord Defendants did not provide Ms. Prince a lease agreement until after commencing the proceeding, in January 15, 2025; the document was misleadingly entitled "lease renewal," with a back-dated one-year lease term of September 01, 2024 through August 31, 2024. Nevertheless, Defendant Cullen & Associates stated in the nonpayment proceeding that Ms. Prince

was "in possession of said premises pursuant to a(n) WRITTEN lease agreement." Ex. B, Petition, ¶ 2.

43.     After receiving the notice of petition, Ms. Prince went to the management office to ask why it had been filed. Petitioner's agent told Ms. Prince that they did not know what was going on and advised her to call the main office. (*See* Exhibit G, Prince Affirmation in Support of Motion ¶ 14.)

44.     Ms. Prince traveled to housing court on August 27, 2024 to submit a *pro se* answer. **Exhibit E** (Answer dated August 17, 2024). Doing so required Ms. Prince to pay $5.80 in roundtrip subway fare. In her answer, Ms. Prince indicated that the rent had already been paid to the Landlord Defendants. (*Id.*, ¶¶ 8-9.)

45.     The action was scheduled for court on March 4, 2025. (*Id.*)

46.     On February 7, 2025, almost a month prior to the court date, Ms. Prince sent Attorney Defendants a letter via email explaining that she had paid all of her rent and asking Petitioner's counsel to discontinue the case. **Exhibit F** (Prince Letter requesting discontinuance. With her letter, Ms. Prince attached Judge Scheckowitz's decision, making clear that a lease agreement must support arrears in a nonpayment proceeding, and an invoice from Defendant Stellar Management, dated December 2014, which indicated as "amount due" the sum of $119,115.86. *See* attachment to Ex. F. Weeks later, the undersigned also emailed Attorney Defendants, explaining that Ms. Prince had paid the petition amount and indicating that Ms. Prince would move for sanctions should Defendants continue to pursue its frivolous lawsuit. **Exhibit G** (Gaines email).

47.     On March 4, 2025, Ms. Prince, now represented by Brooklyn Legal Services, filed a summary judgment motion, seeking dismissal, as well as the imposition of sanctions on

Defendants for initiating a frivolous action.  **Exhibit H** (Notice of Motion); **Exhibit I** (Attorney Affirmation in Support of Prince Motion).

48.    At the March 4, 2025 court appearance, Ms. Prince's counsel asked Attorney Defendants to discontinue the case, as Ms. Prince had paid her rent.  Attorney Defendants refused, despite providing Ms. Prince's counsel with a rent breakdown confirming what Ms. Prince had repeatedly stated: that the petition amount had already been paid and no rent was owed. *See* Ex. D, Rent Breakdown.

49.    The matter was adjourned to April 16, 2025 for Defendants to file opposition papers.  Defendants were to file any opposition by April 1 and Ms. Prince had until the return date to file a reply.  **Exhibit J** (March 4, 2025 stipulation).

50.    Defendants failed to file any opposition papers.

51.    When the parties appeared for the scheduled adjourn date on April 16, Ms. Prince asked the court to grant its unopposed motion.  But the court was unwilling to rule on the entirety of the motion, particularly as related to sanctions, without allowing Defendants another chance to file opposition papers.  The Court thus gave Defendants until May 16 to file opposition, and gave Ms. Prince until May 30 to file a reply.

52.    On May 30, 2025, Ms. Prince filed a supplemental affirmation in support of its motion for dismissal on summary judgment and for sanctions, attaching the March 3, 2025 rent breakdown provided by Defendant Cullen & Associates at the previous court date, which indicated that all payments had been made by Ms. Prince.  **Exhibit K** (Supplemental Attorney Affirmation); *see* Ex. D.

53.    The parties appeared again on June 4, 2025.  At this appearance, Attorney Defendants agreed to dismiss the case without prejudice.  The two-attorney stipulation states:

1)  This case is discontinued with prejudice as [Ms. Prince] had paid the rent sought in the petition prior to the initiation of the case and the petition amount was not due and owing.

2)  [Ms. Prince] withdraws her motion for sanctions in exchange for a one month credit of her portion of July rent, in the amount of $500.00.

**Exhibit L** (June 4, 2025 stipulation).

### *Defendants' Illegal Lawsuit Caused Ms. Prince to Lose Sleep and Jeopardized Her Health*

54.     As a low-income working person, Ms. Prince is precisely the type of vulnerable consumer the FDCPA was designed to protect.

55.     Defendants' conduct caused Ms. Prince to sustain actual damages, including transportation costs for travel back and forth to Kings County Housing Court and to meetings and consultations with her attorneys.

56.     Defendants actions have also caused Ms. Prince substantial emotional harm. Ms. Prince had been devastated to learn that she was being sued by her landlord again, even after finally obtaining her voucher and establishing her right to her unit.  Throughout the pendency of the case she was petrified that she might somehow lose her home after all these years of fighting.

57.     This objectively well-founded fear caused Ms. Prince substantial stress.  Ms. Prince reports being so stressed and anxious that she did not want to leave her home at all.

58.     Ms. Prince suffers from a number of mobility, blood pressure and heart-related disabilities.   As a result, she is largely homebound.   She now has a home health aide who cares for her seven days a week and only leaves the apartment to go to doctor's appointments.

59.     Though she is sick with many chronic conditions, she found herself often rescheduling doctor's appointments because she was too anxious about the threat of losing her

home to bear going outside, thereby potentially compromising her already fragile health.

60.    The Landlord Defendants maintain an office inside Ms. Prince's building; passing by this office during the pendency of the case provoked extreme stress, as it constituted a constant reminder that the Landlord Defendants were trying to force her out.

61.    Ms. Prince continues to fear that Defendants will never abandon their campaign to evict her from this apartment.

62.    Indeed, days after the nonpayment case was discontinued, the Landlord Defendants sent Ms. Prince a letter stating that she still owed them a balance of $189,715.64.  **Exhibit M** (Letter from Stellar Management dated June 10, 2025); **Exhibit N** (July 2025 Statement from Stellar Management, indicating a balance forward of $190,105.64). This balance encompasses over $100,000 in stale arrears that are well beyond the general, six-year statute of limitations referenced in CPLR 213(2).

*Attorney Defendants' Pattern and Practice of Suing for Amounts Not Owed*

63.    The Attorney Defendants systematically file nonpayment proceedings in housing court demanding payments from consumers that exceed the amount permitted by any lease (to the extent a lease even exists).

64.    In many cases, the documents on which Attorney Defendants purportedly rely in alleging nonpayment actually demonstrate that the amounts allegedly owed are not in fact due.

65.    In other words, the Attorney Defendants either systematically misrepresent that they have performed a meaningful attorney review of the underlying documents prior to filing, or they do perform such a review, see that the consumer does not owe the rent through the very ledger they attached, but nonetheless sue the consumer for rent that they do not owe.

66.    The Attorney Defendants filed about 975 lawsuits seeking rent, including 67

13

lawsuits such lawsuits on behalf of the Landlord Defendants, in 2024 alone. Accordingly, the Attorney Defendants' deceptive practice of seeking rent not owed has the potential to affect, and upon information and belief has affected, similarly situated consumers.

67. Because Landlord Defendants own and manage a building with over 300 units, and they use Attorney Defendants to file nonpayment proceedings for a substantial number, if not all, of these proceedings, the above deceptive practices of Attorney Defendants are *per se* also the deceptive practices of Landlord Defendants.

68. Four recent nonpayment petitions in particular illustrate that this conduct has harmed (and certainly has the potential to harm) consumers beyond Ms. Prince: (1) *Tivoli Bi LLC v. Carol Ayala,* LT-309097-22/KI (**Exhibit O,** (*Ayala* Petition)); (2) *Tivoli Bi LLC v. Thelma Andrews,* LT-303352-23/KI (**Exhibit S** (*Andrews* Petition)); (3) *Tivoli Bi LLC v. Dedra Hester,* LT-310498-23/KI (**Exhibit V** (*Hester* Petition)); and (4) *Tivoli Bi LLC v. Phillippe Dericieux,* LT-320688-23/KI (**Exhibit Z** (*Dericieux* Petition)).

### *1. Ayala*

69. In *Ayala,* Attorney Defendants brought a nonpayment proceeding seeking to collect an alleged debt and to evict a consumer on behalf of Tivoli Bi LLC, on or about May 2, 2022. Ex. O (*Ayala* Petition).

70. The petition was executed by Defendant Kevin Cullen, representing to the court and to the tenant that he had performed a meaningful attorney review of the petition. *Id*., p. 2.

71. He also affirmed "under penalty of perjury…that he has read the foregoing petition and knows the contents thereof; that the same are true to his knowledge except as to matters stated to be upon information and belief; and to those matters he believes them to be true." *Id*.

72. In the *Ayala* Petition, Attorney Defendants sought seven months' rent through April

2022 that they alleged had not been paid.

73.     As in Ms. Prince's case, payments sought were not actually owed.

74.     In January 2023, Legal Aid Society noticed its appearance for Ms. Ayala, **Exhibit P** (Notice of Appearance), and in April 2023, Ms. Ayala, by counsel, moved to dismiss, pointing out that the Landlord Defendants' own rent breakdown showed that those payments had all been made in the months in which they were due. **Exhibit Q** (Affirmation in support of MTD.)

75.     Attorney Defendants did not even oppose the motion, but two months later, signed a stipulation of discontinuance. **Exhibit R** (*Ayala* discontinuance).

### *2. Andrews*

76.     In *Andrews*, Attorney Defendants brought a nonpayment proceeding seeking to collect an alleged debt and to evict a consumer on behalf of Tivoli Bi LLC, on or about January 23, 2023. Ex. S (*Andrews* Petition).

77.     The petition was executed by Defendant Kevin Cullen, representing to the court and to the tenant that he had performed a meaningful attorney review of the petition. *Id*., p. 2.

78.     He also affirmed "under penalty of perjury…that he has read the foregoing petition and knows the contents thereof; that the same are true to his knowledge except as to matters stated to be upon information and belief; and to those matters he believes them to be true." *Id.*

79.     In the *Andrews* Petition, Attorney Defendants sought over $60,000, representing rent extending back to November 2019 that they alleged had not been paid.

80.     As in Ms. Prince's case, payments sought were not actually owed.

81.     Ms. Andrews, represented by counsel at Brooklyn Legal Services, moved to dismiss, showing that the Landlord Defendants' own rent breakdown established that the petition sought improper amounts, including amounts for many months of rent that had already been paid.

**Exhibit T** (affirmation in support of motion to dismiss).

82.     The court dismissed the petition (without any opposition from Attorney Defendants), noting in its order that the $18,000 discrepancy between the rent sought and the amount the Landlord Defendants sought to collect could not constitute a "good-faith estimation" of the amount owed. **Exhibit U** (*Andrews* decision).

### 3. *Hester*

83.     In *Hester*, Attorney Defendants brought a nonpayment proceeding seeking to collect an alleged debt and to evict a consumer on behalf of Tivoli Bi LLC, on or about April 1, 2023. Ex. V (*Hester* Petition).

84.     The petition was executed by Defendant Kevin Cullen, representing to the court and to the tenant that he had performed a meaningful attorney review of the petition. *Id.*, p. 2.

85.     He also affirmed "under penalty of perjury . . . that he has read the foregoing petition and knows the contents thereof; that the same are true to his knowledge except as to matters stated to be upon information and belief; and to those matters he believes them to be true." *Id.*

86.     In the *Hester* Petition, Attorney Defendants sought twenty months' rent through March 2023 that they alleged had not been paid.

87.     As in Ms. Prince's case, payments sought were not actually owed.

88.     Six months after the petition was filed, Brooklyn Legal Services noticed its appearance in the case for Ms. Hester (**Exhibit W,** notice of appearance), and approximately six weeks later moved for leave to amend her *pro se* answer to add defenses.  One defense was based upon the fact that the Landlord Defendants' own rent ledger for Ms. Hester's apartment showed that not only had payments been made during several of the months for which the Attorney

Defendants had sued, but that the payments made for those months were actually larger than the payments sought. **Exhibit X** (affirmation in support of motion with proposed amended answer).

89.     Within nine days of the filing of Ms. Hester's motion, the parties stipulated to discontinue the case.  The stipulation of discontinuance noted that Ms. Hester had a rent credit of $4,910 at that time. **Exhibit Y** (*Hester* Discontinuance).

### *4. Dericieux*

90.     In *Dericieux*, Attorney Defendants brought a nonpayment proceeding seeking to collect an alleged debt and to evict a consumer on behalf of Tivoli Bi LLC, on or about July 7, 2023. Ex. Z (*Dericieux* Petition).

91.     The petition was executed by Defendant Kevin Cullen, representing to the court and to the tenant that he had performed a meaningful attorney review of the petition. *Id*., p. 2.

92.     He also affirmed "under penalty of perjury…that he has read the foregoing petition and knows the contents thereof; that the same are true to his knowledge except as to matters stated to be upon information and belief; and to those matters he believes them to be true." *Id*.

93.     In the *Dericieux* Petition, Attorney Defendants sought six months' rent through July 2023 that they alleged had not been paid.

94.     As in Ms. Prince's case, payments sought were not actually owed.

95.     Mr. Dericieux defended himself against the petition.  In a decision dated April 25, 2024, the court dismissed the petition.  The basis for the decision was that Mr. Dericieux had produced in court lease renewal agreements showing that his rent was $1,250 per month, but the petition sought rent at $1,350 per month, and the Attorney Defendants had declined multiple opportunities to correct their petition amount, even as they did not dispute the validity of the agreements. Accordingly, the court found that the Landlord Defendants' and Attorney Defendants'

rent demand was not a good-faith approximation of the amount due.    **Exhibit AA** (*Dericieux* dismissal).

## FIRST CLAIM

**Violations of Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.**
**(Against Attorney Defendants)**

96.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

97.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

98.     Congress designed the FDCPA to be enforced primarily through private parties, such as Plaintiff, acting as "private attorneys general." See S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance . . . ."); and Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

99.     The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the rental arrears were incurred for a residential apartment.

100.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt" as defined by 15 U.S.C. § 1692a(5).

101.     For the reasons set forth in the "Parties" section of this Complaint, the Attorney Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6).

102.     The Attorney Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f.  By way of example and not limitation, Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; falsely representing or implying that a communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

103.     As a direct and proximate result of the Attorney Defendants' violations, Plaintiff has suffered damages, including, inter alia, significant emotional distress, embarrassment, humiliation, exacerbated health problems, and transportation costs.

104.     The injuries inflicted on Plaintiff by the Attorney Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

105.     Plaintiff suffered economic injuries that historically has provided a basis for lawsuits in American courts, including but not limited to foregone wages and costs of

transportation.

106.    Plaintiff's injuries are analogous to, *inter alia*, the following common law claims: wrongful litigation, negligence, invasion of privacy, intrusion upon seclusion, and abuse of process.

107.    The Attorney Defendants had a duty to exercise reasonable care in the collection of debts, including in ensuring that a debt is not linked to the wrong party.

## SECOND CLAIM

### Violation of New York General Business Law § 349
### (Against All Defendants)

108.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

109.    New York General Business Law § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state." An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. L. § 349(h).

110.    As enumerated above, Defendants violated New York General Business Law § 349 by using deceptive acts and practices in the conduct of their businesses.

111.    Defendants committed the above described acts willfully and/or knowingly.

112.    The Defendants' deceptive conduct towards Plaintiff is the type of conduct that has a broad impact on consumers at large.

113.    Defendants' violations were willful and knowing, or, at minimum, evidence a conscious and reckless disregard for basic fairness and for the law. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

114.    As a direct and proximate result of Defendants' violations, Plaintiff has suffered damages, including, inter alia, significant emotional distress, embarrassment, and humiliation.

115.    The injuries inflicted on Plaintiff by Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

116.    Plaintiff suffered economic injuries that historically have provided a basis for lawsuits in American courts, including but not limited to out of pocket expenses for transportation costs.

117.    Plaintiff's injuries are analogous to, *inter alia*, the following common law claims: wrongful litigation, negligence, invasion of privacy, intrusion upon seclusion, and abuse of process.

118.    Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt is not linked to the wrong party, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts.

119.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

120.    As a direct and proximate result of those violations of N.Y. Gen. Bus. § 349, Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and damages, together with costs and attorney's fees.

## THIRD CLAIM

### Violation of New York Judiciary Law § 487
### (Against Attorney Defendants)

121.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

122.    New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

123.    New York Judiciary Law § 487 is a traditional cause of action in American courts; it is "the modern-day counterpart of a statute dating from the first decades after Magna Carta; its language virtually (and remarkably) unchanged from that of a law adopted by New York's Legislature two years before the United States Constitution was ratified." Amalfitano v. Rosenberg, 12 N.Y.3d 8, 14 (2009).

124.    Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of New York Judiciary Law § 487, and Plaintiff so seeks.

## FOURTH CLAIM

### Negligence *Per Se* and Gross Negligence
### (Against All Defendants)

125.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

126.    Had Defendants exercised even slight diligence, they would have known their conduct was unlawful.

127.    Defendants' failure to exercise even slight care or diligence amounts to gross

negligence.

128.    Defendants' actions evince a reckless disregard for the rights of Plaintiff and others. The actions have the appearance of intentional wrongdoing.

129.    Defendants' conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Plaintiff is entitled to a punitive damage award.

130.    Defendants owed Ms. Prince a duty pursuant to the FDCPA, which is designed to protect consumers in part by prohibiting debt collectors from using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; using false, deceptive or misleading representations or means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

131.    Creditors and debt collectors in general owe debtors a duty of reasonable care in collecting their debts. *Hawkins-El v. First American Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd* 529 F. Appx. 45 (2d Cir. 2013).

132.    New York General Business Law § 349 also imposes on Defendants a duty to not engage in deceptive acts and unlawful practices in the conduct of their business.

133.    Defendants breached these duties.

134.    As a direct and proximate result of Defendants' breach of these duties, Ms. Prince suffered compensable harm, including actual damages and emotional distress.

135.    Defendants' conduct was so flagrant as to transcend mere carelessness and constitute willful negligence or recklessness. As a result, Ms. Prince is entitled to actual and punitive damages.

## FIFTH CLAIM

**Harassment in Violation of NY Admin Code § 27-2004(a)(48)(d) and (g)**
**(Against Landlord Defendants)**

136.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

137.    Chapter 2 of the Housing Maintenance Code provides:

[T]he term 'harassment' shall mean any act or omission by or on behalf of an owner that (i) causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy, and (ii) includes one or more of the following acts or omissions, provided that there shall be a rebuttable presumption that such acts or omissions were intended to cause such person to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy . . . .

NY Admin Code § 27-2004(a)(48).

138.    Subsection (d) of this provision states that "commencing baseless or frivolous court proceedings against any person lawfully entitled to occupancy of such dwelling unit" constitutes harassment.  NY Admin Code § 27-2004(a)(48(d).

139.    Further, subsection (g) states that harassment can also consist of:

[O]ther repeated acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace or quiet of any person lawfully entitled to occupancy of such dwelling unit and that cause or are intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or the surrender or waive any rights in relation to such occupancy.

NY Admin Code § 27-2004(a)(48)(g).

140.    As alleged above, Landlord Defendants have repeatedly attempted to get Ms. Prince to abandon her home by bringing multiple baseless lawsuits against her, including, most recently, the July 2024 nonpayment case which gives rise to this action.  Thus, the Landlord Defendants have harassed per subsection (d).

24

141.    Additionally, the Landlord Defendants repeated attempts to collect money which Ms. Prince does not owe or to make her or others believe that she owes more than a hundred thousand dollars towards her apartment, including by mailing invoices and letters each month billing her for such amount, constitutes harassment per subsection (g).

142.    The Landlord Defendants actions have caused injury and damages to Plaintiff, including mental and physical stress and fear.

143.    As a direct and proximate result of Landlord Defendants' harassment, Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, exemplary and damages, together with costs and attorney's fees.

## **DEMAND FOR JURY TRIAL**

144.    In accordance with Fed. R. Civ. P. 38(b), Ms. Prince demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

(a)    Assume jurisdiction of this action;

(b)    Declare that Defendants' actions violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.,* and New York General Business Law § 349;

(c)    Declare that Defendants Cullen & Associates and Kevin Cullen violated New York Judiciary Law § 487;

(d)    Declare that Defendants Tivoli Bi LLC and Stellar Management harassed Ms. Prince under NY Admin Code § 27-2004(a)(48);

(d)    Enjoin Defendants from committing similar deceptive practices in the future;

(e)    Award Plaintiff actual and statutory damages pursuant to 15 U.S.C. § 1692k(a) and

New York General Business Law §§ 349(c) and 349(h); punitive damages under New York General Business Law § 349; treble actual damages under New York Judiciary Law § 487; and punitive damages under New York Admin Code § 27-2004(a)(48);

(f)    Award costs and attorneys' fees to Plaintiff; and

(g)    Award Plaintiff such other and further relief as may be just and proper.


Date: July 2, 2025

/s/ Sara Manaugh
_____
Sara Manaugh
Brooklyn Legal Services
105 Court Street, 4th Floor
Brooklyn, New York 11201
smanaugh@lsnyc.org
(718) 237-5552

Melissa Banks
Legal Services New York City
40 Worth Street, Suite 606
New York, New York 10013
mbanks@lsnyc.org
(646) 442-3658