# EXHIBIT T

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART A

TIVOLI BI LLC,

                  Petitioner,

    v.

THELMA ANDREWS,
49-57 Crown Street
Apt. 20H
Brooklyn, NY 11225

                  Respondent.

LT-303352-23/KI

AFFIRMATION IN SUPPORT

Julian Castronovo, Esq., an attorney duly admitted to practice in the State of New York, affirms the following under penalty of perjury:

1.     I am employed by Brooklyn Legal Services, the attorneys for Respondent THELMA ANDREWS in this proceeding. I am familiar with the facts herein based on information provided by my client, files maintained by my office, publicly available court filings, and information from government entities.

2.     I make this Affirmation in support of Respondent's motion for summary judgment dismissing the proceeding for failure to serve a proper rent demand under RPAPL § 711(2); or

3.     In the alternative, granting Respondent's Request for Summary Judgment pursuant to CPLR § 3212 based upon the doctrine of laches and stale rent; and

4.     Granting any other and further relief as the Court may deem just and proper.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

5. Respondent Thelma Andrews is the tenant-of-record residing at 49-57 Crown Street, Apt. 20H, Brooklyn, NY 11225 ("Subject Premises"). The subject premises are a part of the Housing Preservation and Development ("HPD") Mitchell-Lama project.

6. Ms. Andrews is on a limited income and a portion of her rent is paid through the Human Resources Administration ("HRA"). Andrews Aff. ¶¶ 5,6.

7. On December 12, 2022, Respondent was served with a 14-day Rent Demand from Petitioner stating she owed arrears in an amount of $60,448.01, for rent dating back to November 2019. NYCSEF Doc. No. 1.

8. On January 23, 2023 Petitioner commenced this case by filing a Petition, alleging that Respondent owed $62,423.01 in rental arrears, dating back to December 2022; however, Petition states $60,448.01 was owed in just the one month of December 2022. NYSCEF Doc. No. 1.

9. Respondent retained Brooklyn Legal Services who appeared for Ms. Andrews on July 31, 2023. On September 28, 2023, Brooklyn Legal Services, on behalf of Ms. Andrews, submitted an answer with counterclaims and a Demand for a Bill of Particulars. NYSCEF Doc. No. 8.

10. On February 23, 2024, Parties returned to court where Petitioner provided responses to the Demand for a Bill of Particulars.

11. On that same date, the case was adjourned on consent to March 18, 2024. *See* NYSCEF Doc. No. 18.

12. Respondent now seeks summary judgment for dismissal of the proceeding for failure to serve a proper rent demand under RPAPL § 711(2) or, in the alternative, her

affirmative defense of laches.

## ARGUMENT

I. **THE COURT SHOUD DISMISS THE PROCEEDING BECAUSE PETITIONER FAILED TO STATE A CAUSE OF ACTION WHEN IT RELIED ON A DEFECTIVE RENT DEMAND SEEKING NON-RENT PENALTY SURCHARGES AND RENT ALREADY COLLECTED.**

1. CPLR § 3212 gives a court authority to grant summary judgment when the nonmoving party is unable to establish a triable issue of material fact. The purpose of summary judgment is to "expedite all civil cases by eliminating from the Trial Calendar claims which can properly be resolved as a matter of law." *Andre v. Pomeroy*, 35 N.Y.2d 361, 374 (1974) (*citing Millerton Agway Coop v. Briarcliff Farms*, 17 N.Y.2d 57 (1966)); *see also Pollak v. Lake Tibet Estates Inc.*, 19 A.D.2d 747 (2d Dept. 1963).

2. Importantly, "when there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the Trial Calendar and thus deny the other litigants the right to have their claims promptly adjudicated." *Andre*, 35 N.Y.2d at 364.

3. The Court should grant summary judgment to Respondent because there is no material dispute of fact that Petitioner served a rent demand seeking arrears that were not owed.

4. The rent demand served by Petitioner in this case is on its face defective because it seeks both non-rent penalty surcharges as rent and rent which Petitioner had already been paid as of the date of service. Since predicate notices cannot be amended, this proceeding should be dismissed.

5. Summary nonpayment proceeding brought pursuant to §711(2) may only be maintained to collect unpaid rent. In Mitchell-Lama buildings, rent is limited to the contractual agreement stated in the lease and "surcharges cannot be recovered in a summary nonpayment

proceeding brought pursuant to RPAPL 711(2) as such surcharges do not constitute unpaid rent." *Matter of Dayton Towers Corp. v. Gethers,* 24 A.D.3d 663, 664 (2d Dept 2005); *see Matter of Bedford Gardens Co. v. Silberstein,* 269 A.D.2d 445, 702 N.Y.S.2d 884 (2d Dept 2000); *see also Lincoln Amsterdam House v. Baxter,* 224 A.D.2d 207, 637 N.Y.S.2d 696 (1st Dept 1996).

6. Furthermore, RPAPL §711(2) requires a landlord to demand payment of outstanding rent from a tenant as a condition precedent to commencement of a nonpayment proceeding. *See EOM 106-15 217th Corp. v. Severine*, 62 Misc.3d 141(A) (App. Term 2d. Dept. 2019); *Estates, Inc. v. Goodman*, 102 Misc.2d 504 (App. Term 1st Dept. 1979), aff'd 78 A.D.2d 512 (1st Dept. 1980).

7. Thus, under RPAPL § 711(2), a proper rent demand is an essential element of the cause of action for nonpayment of rent. *339 Property LLC v. Brown*, L&T 102087/11, NYLJ 1202617602323 at *1 (Civ. Ct. Kings Co. 2013). As a fact upon which the proceeding is based, an insufficient rent demand cannot be amended, and requires dismissal of the proceeding. *Chinatown Apts. v. Chu Cho Lam*, 51 N.Y.2d 786 (1980).

8. The necessity of a proper rent demand is not a mere technical formality. Rather, the requirement ensures that a tenant receives sufficient notice of the nature of the alleged default in order to timely cure and avoid unnecessary litigation. *J.D. Realty Assoc v. Jorrin*, 166 Misc.2d 175 (Civ. Ct., N.Y. County 1995), aff'd 169 Misc.2d 292 (App. Term 1st Dept. 1996). "[R]eceiving an accurate demand of rent due is of paramount importance especially in view of the consequences of non-payment." *JLNT Realty LLC v. McKenzie*, N.Y.L.J. July 19, 2011 at 34 (Civ. Ct., Kings Cty. 2011).

9. A proper rent demand must: (1) be a good faith assertion of the rent amount due, (2) give actual notice of the rent allegedly due, and (3) clearly inform the tenant of the period for

which the sum is in default. *Dendy v. McAlpine*, 27 Misc.3d 138(A) (App. Term 2d Dept. 2010); *Schwartz v. Weiss-Newell*, 87 Misc.2d 558 (Civ. Ct. New York Co. 1976); *St. James Court LLC v. Booker*, 176 Misc.2d 693 (Civ. Ct. Kings Co. 1998).

10. It is well established that a rent demand that fails to credit payments already made toward the arrears demanded is not an approximate good faith sum of rent owed. *Cypress Court Assocs. v. McLauren*, 938 N.Y.S.2d 226 (Civ. Ct. Kings Co. 2011). Additionally, "it is well settled that, in asserting the amount of rent owed for each period, a landlord must apply the payments that it accepted to the months for which they were earmarked." *Severine*, 62 Misc.3d 141(A) (App. Term 2d. Dept. 2019); see also *Prime Residential Brooklyn II, LLC v. Chrispin,* 229 N.Y.L.J. 101 (Civ. Ct. Kings Co. 2003) ("A landlord is bound to apply DSS rent payments to the periods the payments are earmarked for.").

11. In this case, there is a significant discrepancy between the arrears sought by the rent demand allegedly served on December 12, 2022, and the payments reflected by rent receipts provided to Respondent prior to service of the rent demand. The following chart highlights the months where there is a discrepancy between the arrears sought by the rent demand and the payments reflected by the rent receipts:

**SPACE LEFT INTENTIONALLY BLANK**

| Month | Rent Owed According to Lease | Rent Collected | Difference | Rent Alleged Owed on Rent Demand |
|---|---|---|---|---|
| 19-Nov | $1,250.00 | $1,022.60 | $227.40 | $1,098.01 |
| 19-Dec | $1,250.00 | $1,022.60 | $227.40 | $1,250.00 |
| 20-Jan | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 20-Feb | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 20-Mar | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 20-Apr | $1,250.00 | $509.48 | $740.52 | $1,250.00 |
| 20-May | $1,250.00 | $1,528.44 | ($278.44) | $1,250.00 |
| 20-Jun | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 20-Jul | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 20-Aug | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 20-Sep | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 20-Oct | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 20-Nov | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 20-Dec | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 21-Jan | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 21-Feb | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 21-Mar | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 21-Apr | $1,250.00 | $1,018.96 | $231.04 | $1,250.00 |
| 21-May | $1,250.00 | $0.00 | $1,250.00 | $1,875.00 |
| 21-Jun | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 21-Jul | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 21-Aug | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 21-Sep | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 21-Oct | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 21-Nov | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 21-Dec | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 22-Jan | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 22-Feb | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 22-Mar | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 22-Apr | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 22-May | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 22-Jun | $1,350.00 | $0.00 | $1,350.00 | $1,875.00 |
| 22-Jul | $1,350.00 | $0.00 | $1,350.00 | $1,975.00 |
| 22-Aug | $1,350.00 | $0.00 | $1,350.00 | $1,975.00 |
| 22-Sep | $1,350.00 | $0.00 | $1,350.00 | $1,975.00 |
| 22-Oct | $1,350.00 | $0.00 | $1,350.00 | $1,975.00 |
| 22-Nov | $1,350.00 | $0.00 | $1,350.00 | $1,975.00 |
| 22-Dec | $1,350.00 | $0.00 | $1,350.00 | $1,975.00 |

12. This chart illustrates that for 18 months, Petitioner sought 82% more than what was actually owed and ignored a total of $18,348.56 of rental payments.

13. In addition, the chart, in addition to Petitioner's own ledger, attached hereto as Exhibit A, shows that at least $25,008.00 of the $60,448.01 is actually surcharges which cannot be recovered in nonpayment proceedings. *See Matter of Dayton Towers Corp. v. Gethers.*

14. In total, $43,356.56 out of the $60,448.01, or 72%, of the rent alleged in Petitioner's rent demand cannot be collected through these summary proceedings.

15. Thus, the rent demand thus failed to provide Respondent with a good faith approximation of the amount due. It is therefore not a proper rent demand under RPAPL § 711(2) and since it cannot be amended, the proceeding should be dismissed for failure to state a cause of action.

**II. IN THE ALTERNATIVE, THIS COURT SHOULD GRANT SUMMARY JUDGMENT ON RESPONDENT'S LACHES DEFENSE BECAUSE PETITIONER UNREASONABLY DELAYED BRINGING THIS PROCEEDING FOR OVER THREE YEARS WITHOUT EXCUSE, SEVERELY PREJUDICING RESPONDENT'S ABILITY TO PAY.**

16. Summary judgment may be granted under Civil Practice Law and Rules ("CPLR") § 3212(b) when it has been established that no triable issue of fact exists in a case and the moving party is entitled to judgment as a matter of law. *See Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395, 404 (1957); *Zuckerman v. City of New York*, 49 N.Y.2d 557 (1980). A motion for summary judgment must be supported by an affidavit based on personal knowledge or by evidence proffered in admissible form through the affidavit or affirmation of an attorney. *See Zuckerman*, 49 N.Y.2d at 563; *Branch Servs., Inc. v. Cooper,* N.Y.S.2d 170, 174 (2d Dept. 2013).

17. A laches defense may be adjudicated by motion for summary judgment where no triable issue of fact exists. *See Renaisance Equity Holding LLC v. Forde*, Civ. Ct. Kings Cnty., October 3, 2023, McClanahan, J., Index No. 305861/21; *Marriott v. Shaw*, 574 N.Y.S.2d 477 (Civ. Ct. Kings Cnty. 1991); *see also 775 Greene Ave. HDFC v. Thomas*, Civ. Ct. Kings Cnty., July 12, 2023, Donoghue, J., Index No. 58170/20.

**A. Respondent has established all four necessary elements of her laches defense.**

18. The equitable doctrine of laches bars a party from obtaining relief where it unreasonably or inexcusably delays enforcement of a right, resulting in prejudice to the opposing party. *See Marriott v. Shaw*, 151 Misc. 2d 938 (Civ. Ct. Kings Cnty. 1991) (citing *Dante v. 310 Associates*, 121 A.D.2d 332 (1st Dept. 1986)).

19. A laches defense comprises four elements: "(1) conduct by an offending party giving rise to the situation complained of; (2) delay by the complainant asserting his or her claim for relief despite the opportunity to do so; (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief; and (4) injury or prejudice to the offending party in the event that relief is accorded to the complainant." *Dwyer v. Mazzola*, 567 N.Y.S.2d 281, 282 (2d Dept. 1991).

20. A respondent asserting the defense of laches bears the initial burden of establishing these four elements. *See Marriott*, 151 Misc. 2d at 941. If the respondent establishes these elements, the burden then shifts to the petitioner to show a reasonable excuse for the delay. *Id.* In the case of an eviction proceeding, if the landlord-petitioner fails to raise an issue of fact as to whether there was reasonable cause for delay in bringing a proceeding based on non-payment of rent, laches may bar the landlord from obtaining a judgment of possession against the tenant based on the outstanding stale arrears. *See Dedvukaj v. Madonado*, 115 Misc. 2d 211 (Civ. Ct.

FILED: KINGS CIVIL COURT - L&T 03/17/2024 11:45 AM   INDEX NO. LT-303352-23/KI
NYSCEF DOC. NO. 20                                    RECEIVED NYSCEF: 03/17/2024

Case 1:25-cv-03679-NCM-CLP    Document 34-20    Filed 10/03/25    Page 10 of 14 PageID #: 484

Bronx Cnty. 1982). All four conditions necessary to establish a laches defense are met in the instant matter.

    i.    <u>Respondent's failure to pay rent constitutes the first element of the laches defense as conduct by an offending party giving rise to the situation complained of.</u>

21.    The first element of the laches defense is conduct by an offending party giving rise to the situation complained of. *Dwyer*, 567 N.Y.S.2d at 282 . The failure to pay rent resulting in a summary nonpayment proceeding is a classic example of such conduct. *See, e.g.*, *Forde*, Index No. 305861/21. As it is undisputed that Respondent's failure to pay rent constitutes the conduct that gave rise to this nonpayment proceeding, the situation Petitioner complains of, Respondent has established the first element of laches.

    ii.    <u>Tivoli BI LLC delayed over 3 years without good cause before commencing this proceeding cause, satisfying the second element of the laches defense.</u>

22.    The second element of the laches defense is delay by the complainant asserting its claim for relief despite the opportunity to do so. *Dwyer*, 567 N.Y.S.2d at 282. The amount of time sufficient to constitute delay for the purposes of making out a defense of laches may vary. In *Forde,* this Court found that a tenant had made out the second element of the laches defense where the landlord's ledger reflected that the tenant had first defaulted in the payment of rent in 2018, but the landlord without excuse did not commence the nonpayment proceeding until 2021, three years later. Index No. 305861/21. In *Marriot*, the delay was 25 months. 151 Misc. 2d at 939. In *Maxwell v. Simons*, the court severed all but the three months of rent owed prior to the commencement of the proceeding when there was an eight, ten, and eleven-month delay by the landlord in suing to evict various tenants. 77 Misc. 2d 184 (Civ. Ct. Kings Cnty. 1973).

23.    In the instant case, Petitioner's 14-day Rent Demand reflects that Respondent's first alleged default in the payment of rent occurred in November, 2019, 39 months— over three

years—before Tivoli commenced this action in January 2023, a time period identical to the time period in *Forde,* Index No. 305861/21 and almost a year longer than the period in *Marriot*, 574 N.Y.S.2d 477. *See* NYSCEF Doc. No. 1.

24. During the time period between November 2019 and January 2023, an enormous sum of arrears accumulated—as a result of Petitioner's delay in commencing this proceeding. The Petition seeks a judgment of possession based on $62,423.01 in arrears accrued beginning November 2019. NYSCEF Doc. No. 1. It is clear that such a delay is without good cause.

25. As there is no dispute about the duration of time between the first month in which alleged arrears began accruing and the commencement of this proceeding, and Tivoli could not possibly proffer an excuse for the delay, there is no genuine issue of material fact regarding this element of the defense.

  iii. <u>Respondent lacked notice of Tivoli's intent to commence this nonpayment proceeding, satisfying the third element of the laches defense.</u>

26. The third element of the laches defense is a lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief. *Dwyer*, 567 N.Y.S.2d at 282.

27. Respondent first allegedly defaulted in the payment of rent in November 2019. NYSCEF Doc No. 4. However, at no time prior to the service of the Rent Demand on April 4, 2023, did Tivoli serve Respondent with a predicate rent demand or other notice of a pending eviction proceeding regarding the alleged arrears. Andrews Aff. ¶ 4.

28. Respondent has therefore established the third element of the laches defense, lack of notice that Petitioner would commence this proceeding.

  iv. <u>Respondent would suffer extreme prejudice if Tivoli is granted its requested relief, as she would be evicted and struggle to find housing, satisfying the final element of the laches defense.</u>

FILED: KINGS CIVIL COURT - L&T 03/17/2024 11:45 AM                                INDEX NO. LT-303352-23/KI
NYSCEF DOC. NO. 20                                                                RECEIVED NYSCEF: 03/17/2024

Case 1:25-cv-03679-NCM-CLP    Document 34-20    Filed 10/03/25    Page 12 of 14 PageID #: 486

29. The fourth and final element of the laches defense is injury or prejudice to the offending party in the event that relief is accorded to the complainant. *Dwyer*, 567 N.Y.S.2d at 282.

30. Prejudice in the context of a laches defense against a summary nonpayment proceeding has been repeatedly found where a significant arrears balance has accrued as the result of the landlord's delay in commencing the proceeding, such that the tenant will be incapable of satisfying the petition and avoiding eviction. *See, e.g.*, *Forde*, Index No. 305861/21; *A & E Tiebout Realty,* 23 Misc. 3d 1112(A) (Civ. Ct. Bronx Cnty. 2009) ("As petitioner seeks respondent's past arrears on pain of her eviction, respondent has amply demonstrated sufficient prejudice to support a laches claim"); *Marriott*, 574 N.Y.S.2d at 480 (finding prejudice where tenant did not have the resources to pay the large rental arrears); *1515 Macombs, LLC v. Jackson*, 20 N.Y.S.3d 869, 873 (Civ. Ct. Bronx Cnty. 2015) (finding prejudice established where tenant would be evicted because landlord's delay had resulted in accumulation of large sum of arrears she lacked resources to pay).

31. The relief sought by Tivoli in this proceeding is the eviction of Respondent based on the enormous sum of arrears that accumulated due to Tivoli's unexcused delay in commencing this proceeding, a sum that Respondent cannot possible satisfy so as to avoid eviction. Andrews Aff. ¶ 5. By waiting to sue for possession, Petitioner has forced Ms. Andrews to immediately pay all her arrears in one lump sum, or forfeit her Mitchell-Lama apartment. *See* RPAPL § 749(3) (requiring court to vacate judgment of possession if tenant pays all rent due prior to execution of the warrant of eviction). This is in stark contrast to the impact of a monetary judgment where Ms. Andrews could lawfully take steps to satisfy the judgment over time and benefit from federal protections on wage garnishment. *See* 15 U.S.C. § 1673 (placing strict limitations on the rate at which garnishments may be taken from earned income).

32. Additionally, Petitioner's delay will make it difficult, if not impossible, for Ms. Andrews to receive emergency assistance for her arrears to prevent an eviction. Ms. Andrews is on a rent subsidy provided by Human Resources Administration ("HRA"). *See* Andrews Aff. at ¶ 6. HRA had no notice of the astronomical arrears owed and does not think it is money that is justly owed to Petitioner for rent as many of the arrears are non-rent surcharges. Thus, HRA is unlikely to approve a grant of over $60,000.00. The Regulations of the Department of Social Services, of which HRA is a part, state that assistance with rental arrears must be limited to six months rent or ten month's rent under "extenuating circumstances." 18 NYCRR § 370.10(f)(4). By delaying this lawsuit for over three years, Petition has prejudiced Ms. Andrews' ability to seek emergency financial assistance which may be her only path to remaining in her home.

33. On the other hand, had Tivoli brought this proceeding within a reasonable amount of time after Respondent first defaulted in the payment of rent in 2019, rather than waiting over three years before doing so, Respondent would have faced a manageable sum of arrears and an opportunity to satisfy the petition.

34. Respondent has established all four elements of the laches defense. As there are no potential issues of fact to be adjudicated on any of these elements, this Court should grant her summary judgment on her laches defense. "Laches is an equitable doctrine based on fairness." *Karagiannis v. Nasar/Hyer*, 35 Misc. 3d 37 (App. Term, 2d Dept. 2012). Fairness demands severing the stale rent in this case. Severing the stale arrears from any possessory judgment will allow Petitioner to be made whole while also preventing Ms. Arrington from losing her home due to Petitioner's years' long delay.

35. The Court should therefore grant summary judgment for Ms. Andrews and sever any arrears prior to October 2023, three months before the Petition, as stale.

FILED: KINGS CIVIL COURT - L&T 03/17/2024 11:45 AM INDEX NO. LT-303352-23/KI
NYSCEF DOC. NO. 20                                              RECEIVED NYSCEF: 03/17/2024

Case 1:25-cv-03679-NCM-CLP   Document 34-20   Filed 10/03/25   Page 14 of 14 PageID #: 488

**WHEREFORE** for all of the above reasons, Respondent respectfully requests that this Court grant the instant motion.

I affirm on this 15th day of March 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

                        **BROOKLYN LEGAL SERVICES**

*Julian Castronovo*
FA50F886E68B4DD...

By: Julian Castronovo
Staff Attorney
105 Court Street, 4th Floor
Brooklyn, NY 11201
(718) 233-6359
jcastronovo@lsnyc.org