

October 6, 2025

**VIA ECF**

Honorable Natasha C. Merle
District Judge, United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    Plaintiff's Response to Defendants Tivoli Bi, LLC and Stellar Management's letter for pre-motion conference to file motion to dismiss [ECF 32]
             *Lisa Prince v. Tivoli Bi LLC, et al.*, 1:25-CV-03679-NCM-CLP

Dear Judge Merle:

      Along with the Law Office of Ahmad Keshavarz, Brooklyn Legal Services represents Plaintiff Lisa Prince in the above-referenced action. This letter responds to Defendants Tivoli Bi, LLC and Stellar Management's request for a pre-motion conference concerning their proposed FRCP 12(b)(1) motion to dismiss for lack of standing. Ms. Prince has established and pled standing sufficiently for this case to proceed; briefing on this issue need not occur.

      Plaintiff brought this suit against Defendants Cullen & Associates, P.C., a law firm, and Kevin Cullen, the principal of the firm (collectively "Attorney Defendants"), for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York Judiciary Law § 487; against Attorney Defendants and Defendants Tivoli Bi LLC and Mel Management Corp., d/b/a Stellar Management ("Stellar Management) (collectively "Landlord Defendants"), for violating New York General Business Law § 349 and committing negligence and gross negligence; and against the Landlord Defendants for tenant harassment. *See* First-Amended Complaint ("FAC"), ECF 34.

      For nearly ten years, the Landlord Defendants, through the Attorney Defendants, have filed multiple frivolous nonpayment cases in Kings County Housing Court against Lisa Prince in a relentless campaign to evict her from her home by demanding enormous amounts of money she does not owe, culminating in their most recent 2024 case against her, a summary eviction action for nonpayment of rent, which sought thousands of dollars from Ms. Prince which had indisputably been paid.

**Demand Justice.**

**Brooklyn Legal Services: Tenant Rights Coalition**
1709 St. Marks Avenue, Brooklyn, NY 11233
Phone: 718-237-5500   |   www.LegalServicesNYC.org
**Hon. Betty Staton**, President   |   **Tanya Wong**, Project Director
**Monica Corrine Moran, Esq.**, Board Chair   |   **Michael L. Williams**, Vice Chair



Hon. Natasha C. Merle
October 6, 2025
Page 2

A plaintiff demonstrates Article III standing by showing "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "'[T]raditional tangible harms,' such as physical harms and monetary harms, 'readily qualify as concrete injuries under Article III.'" *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 284 (2d Cir. 2023) (quoting *TransUnion*, 141 S. Ct. at 2204).

Ms. Prince alleges that she spent $5.80 in subway fare traveling to and from the Kings County Housing Court for the purpose of filing an answer in the eviction case filed by Defendants—a redressable, concrete harm that was caused by Defendants. That is enough of a monetary harm for standing. "[O]ut-of-pocket expenses and lost time satisfy Article III's concrete-injury requirement when they are a foreseeable consequence of defendant's actions." *Onfroy v. Law Offices of Geoffrey T. Mott, P.C.,* 751 F. Supp. 3d 195, 202 (E.D.N.Y. 2024) (quoting *Bohnak*, 79 F.4th at 286) (cleaned up). This remains true even where the alleged out-of-pocket injury is of a "relatively low dollar amount[]." *Id.* (finding that a tenant had established concrete injury sufficient to maintain an FDCPA claim where she had paid for parking at landlord-tenant court, paid for copies of the court case, and lost wages at work due to appearances).

The Landlord Defendants' lack-of-standing argument is not so much that Ms. Prince was not injured, but rather that "Plaintiff received a $500.00 credit towards her rent in exchange for withdrawing a motion for sanctions," her injury did not persist. (ECF 32 at 1.)[1]

As a factual matter, the assertion is untrue. "[M]ere days after the 2024 nonpayment case was discontinued, far from providing the $500 credit, the Landlord Defendants sent Ms. Prince a letter stating that she still owed them a staggering balance of $189,715.64, threatening suit if it was not paid." FAC ¶ 54. Those demands continue. *Id.* ¶ 54-56, Exh. BB (ECF 34-28). None of the invoices issued to Ms. Prince since the case was discontinued indicate that she did, indeed, receive the agreed-upon credit.

But even if a credit had been given, it would not have erased Ms. Prince's monetary injury. The Landlord Defendants offer no authority in support of their novel argument that a credit will void a plaintiff's ability to demonstrate standing via monetary injury. Ms. Prince was injured by being made to answer the lawsuit; she suffered concrete harm by having to spend money and take time to travel to court. The illusory $500 rent credit, promised nearly a year after Ms. Prince paid to come to court, was not offered as compensation for the monetary and other concrete injuries Ms. Prince suffered due to the unlawful debt collection attempt.[2] Rather, the rent credit was

---

[1] Oddly, the letter application attaches what appears to be an internal record of the Attorney Defendants (ECF 32-1), not the actual stipulation of dismissal (ECF 34-12).

[2] To the extent Defendants make a quasi-*res judicata* argument that argument also fails. Ms. Prince has not settled nor been awarded damages related to the claims she brings here.

Hon. Natasha C. Merle
October 6, 2025
Page 3

offered *only* in exchange for Ms. Prince's withdrawal of her sanctions motion.[3]

Plus, even if Ms. Prince had no monetary injury, she can additionally establish Article III standing and maintain this suit on two other independent bases. First, Ms. Prince has pled facts sufficient to establish injury-in-fact because the non-monetary injuries she suffered have "a close relationship to harms traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion,* 141 S. Ct. at 2204 (explaining that plaintiffs may also plead concrete injury for purposes of Article III standing by alleging they suffered injury analogous to a common law cause of action). The harm Ms. Prince suffered here is analogous to malicious prosecution, wrongful use of civil proceedings, and abuse of process. *See Onfroy*, 751 F. Supp. 3d at 202.

Second, Ms. Prince recently amended her complaint to, *inter alia*, allege in greater detail the emotional distress she has suffered as a result of Defendants' conduct: extreme anxiety about leaving her home due to fear of eviction, suicidal thoughts, trouble sleeping, and reduced appetite. (*See* First Amended Complaint, ECF 34 at ¶¶ 57-68). These specific allegations of emotional and psychological harm, directly caused by the conduct at issue, are sufficient to establish concrete injury for the purpose of Article III standing. *Cf. Maddox v. Bank of New York Mellon Trust Company, N.A.*, 19 F.4th 58, 66 (2d. Cir. 2021) (noting that "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing").

As Defendants have not pointed to any legal authority and provide no reasoned basis to support their injury-in-fact argument, the Court should not grant their request for a pre-motion conference. Ms. Prince's allegations have clearly established multiple bases for Article III standing; Defendants' Rule 12(b)(1) motion cannot succeed. The Court should deny Defendants' request to brief the standing issue and allow discovery and other litigation on the merits of Ms. Prince's claims to proceed.

Respectfully submitted,

Kailyn Gaines
*Attorney for Plaintiff*

cc: All attorneys of record via ECF

---

[3] Even if sanctions were awarded, they would not be paid to Ms. Prince as compensation but rather to the state or the state bar under Section 130-1.3 of the Uniform Rules for the New York State Trial Courts.