# LEGAL SERVICES NYC | BROOKLYN

**VIA ECF**

Honorable Natasha C. Merle
District Judge, United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   *Lisa Prince v. Tivoli Bi LLC, et al.*
> 1:25-CV-03679-NCM-CLP

Dear Judge Merle:

Along with the Law Office of Ahmad Keshavarz, Brooklyn Legal Services represents Plaintiff Lisa Prince in the above-referenced action. This letter responds to Defendants Tivoli Bi, LLC's and Stellar Management's request for a pre-motion conference concerning their proposed FRCP 12(b)(1) motion to dismiss Ms. Prince's First Amended Complaint ("FAC") for lack of standing. Ms. Prince has established and pled standing sufficiently for this case to proceed; briefing on this issue need not occur. Plaintiff brought this suit against Defendants Cullen & Associates, P.C., a law firm, and Kevin Cullen, the principal of the firm (collectively "Attorney Defendants"), for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and New York Judiciary Law § 487; against Attorney Defendants and Defendants Tivoli Bi LLC and Mel Management Corp., d/b/a Stellar Management ("Stellar Management) (collectively "Landlord Defendants"), for violating New York General Business Law § 349 and committing negligence and gross negligence; and against the Landlord Defendants for tenant harassment. *See* FAC, ECF 34. For nearly ten years, the Landlord Defendants, through the Attorney Defendants, have filed multiple frivolous nonpayment cases in Kings County Housing Court against Lisa Prince in a relentless campaign to evict her from her home by demanding enormous amounts of money she does not owe, culminating in their most recent 2024 case against her, a summary eviction action for nonpayment of rent, which sought thousands of dollars from Ms. Prince which had indisputably been paid.

A plaintiff demonstrates Article III standing by showing "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "'[T]raditional tangible harms,' such as physical harms and monetary harms, 'readily qualify as concrete injuries under Article III.'" *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 284 (2d Cir. 2023) (quoting *TransUnion*, 141 S. Ct. at 2204).

Ms. Prince alleges that she spent $5.80 in subway fare traveling to and from the Kings County Housing Court for the purpose of filing an answer in the eviction case filed by Defendants—a

**Demand Justice.**

**Brooklyn Legal Services** | 105 Court Street, Brooklyn, NY 11201
Phone: 718-237-5500 | Fax: 718-855-0733 | www.LegalServicesNYC.org
**Hon. Betty Staton**, President | **Tanya Wong**, Project Director
**Monica Corrine Moran, Esq.**, Board Chair | **Michael L. Williams**, Vice Chair



LSC | America's Partner for Equal Justice
LEGAL SERVICES CORPORATION

Hon. Natasha C. Merle
October 28, 2025
Page 2

redressable, concrete harm that was caused by Defendants. That is enough of a monetary harm for standing. "[O]ut-of-pocket expenses and lost time satisfy Article III's concrete injury requirement when they are a foreseeable consequence of defendant's actions." *Onfroy v. Law Offices of Geoffrey T. Mott, P.C.,* 751 F. Supp. 3d 195, 202 (E.D.N.Y. 2024) (quoting *Bohnak*, 79 F.4th at 286) (cleaned up). This remains true even where the alleged out-of-pocket injury is of a "relatively low dollar amount[]." *Id.* (finding that a tenant had established concrete injury sufficient to maintain an FDCPA claim where she had paid for parking at landlord-tenant court, paid for copies of the court case, and lost wages at work due to appearances).

The Landlord Defendants' lack-of-standing argument is not so much that Ms. Prince was not injured, but rather that "Plaintiff received a $500.00 credit towards her rent in exchange for withdrawing a motion for sanctions," her injury did not persist. (ECF 36 at 1.)[1]

This assertion is untrue. "[M]ere days after the 2024 nonpayment case was discontinued, far from providing the $500 credit, the Landlord Defendants sent Ms. Prince a letter stating that she still owed them a staggering balance of $189,715.64, threatening suit if it was not paid." FAC ¶ 54. Those demands continue. *Id.* ¶ 54-56, Exh. BB (ECF 34-28). None of the invoices issued to Ms. Prince since the case was discontinued indicate that she received the agreed-upon credit.

But even if a credit had been given, it would not have erased Ms. Prince's monetary injury. The Landlord Defendants offer no authority in support of their novel argument that a credit will void a plaintiff's ability to demonstrate standing via monetary injury. Ms. Prince was injured by being made to answer the lawsuit; she suffered concrete harm by having to spend money and take time to travel to court. The illusory $500 rent credit, promised nearly a year after Ms. Prince paid to come to court, was not offered as compensation for the monetary and other injuries Ms. Prince suffered due to the unlawful debt collection attempt.[2] Rather, the rent credit was offered *only* in exchange for Ms. Prince's withdrawal of her sanctions motion.[3]

Further, even if Ms. Prince had no monetary injury, she can additionally establish Article III standing and maintain this suit on two other independent bases. First, Ms. Prince has pled facts sufficient to establish injury-in-fact based solely upon her non-monetary injuries, because "the vast majority of Plaintiff's claims concern Defendants' alleged misconduct during the Civil Court action, [so] Plaintiff's claims share 'a close relationship [with] harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Makhnevich v. Bougopoulos*, 2022 WL 939409, at *5 (E.D.N.Y. 2022) (quoting *TransUnion*, 141 S. Ct. at 2204), *aff'd,* 2024 WL 1653464 (2d Cir Apr. 17, 2024). The harms Ms. Prince has suffered are analogous to malicious prosecution, wrongful use of civil proceedings, and abuse of process. *See Onfroy*, 751 F. Supp. 3d at 202 (filing two lawsuits seeking judgment on same debt). *See also Benjamin v. Rosenberg & Associates, LLC*, 2021 WL 3784320, at *6 (D.D.C. Aug. 26, 2021) (wrongful foreclosure analogous to common law wrongful-litigation torts).

---

[1] The letter application refers to an attachment, which the Landlord Defendants state is a copy of the stipulation of settlement of the landlord/tenant petition (ECF 36 at 1); however, nothing is attached to the letter.

[2] To the extent Defendants make a quasi-*res judicata* argument, that argument also fails. Ms. Prince has neither settled nor been awarded damages related to the claims she brings here.

[3] Even if sanctions had been awarded, they would have been paid not to Ms. Prince as compensation, but rather to the State of New York or the state bar under Section 130-1.3 of the Uniform Rules for the New York State Trial Courts.

Hon. Natasha C. Merle
October 28, 2025
Page 3

Second, the FAC is replete with details of the severe emotional distress Ms. Prince has suffered as a result of Defendants' conduct: her continual anxiety about leaving her home due to fear of eviction has led to physical symptoms, including insomnia and reduced appetite, and she has experienced suicidal thoughts. (*See* FAC, ECF 34 at ¶¶ 57-68.) These specific allegations of emotional and psychological harm, directly caused by the conduct at issue, suffice to establish concrete injury for the purpose of Article III standing. Indeed, "[e]motional distress regarding a risk of future injury is the sort of harm 'that *TransUnion* contemplated might form the basis for Article III standing.'" *Baptiste-Elmine v. Richland & Falkowski*, PLLC, 2025 WL 974346, at *6 (E.D.N.Y. April 1, 2025) (quoting *Maddox v. Bank of New York Mellon Trust Company, N.A.*, 19 F.4th 58, 65 (2d Cir. 2021).

The cases cited by Landlord Defendants involve vague or conclusory allegations of emotional distress without sufficiently specific factual support. *Benjamin* is particularly instructive as to the scope and specificity of emotional distress damages that would satisfy Article III standing. Just as for Ms. Prince, the cause of the emotional distress was the risk of losing housing—in that case, via foreclosure. *Benjamin* at *5. The emotional distress at issue in Benjamin was "fear of losing the [p]roperty, worry about where her loved ones will live, anxiety about being kicked out and becoming homeless, very heavy stress, severe headaches and stomach aches, sleepless nights, eating disorders, excessive worry, and other mental and emotional distress." *Id*. This is strikingly similar to the specific facts asserted by Ms. Prince in articulating her emotional distress. *See* FAC, ECF 34 ¶¶ 57-68; ¶ 64 ("The stress of living with the threat of losing her longtime home is so severe that it affects Ms. Prince's appetite: instead of meals, she can only bring herself to eat snacks. She suffers headaches and often cannot sleep at night."); ¶ 64 ("At times, the overwhelming fear and anxiety caused by Defendants' efforts to evict her has led Ms. Prince to contemplate taking her own life, wondering if she'd be better off if she jumped from her unit's balcony. What held her back from doing so was the feeling that she could not leave her daughter behind."); ¶ 68 ("In her own words, this is how [Ms. Prince] describes her feelings: "Mentally and physically, they keep me going through the same thing over and over. Oh my God, here we go again. All over again. When you think you're resting, you don't rest, because here they come again. They're like hyenas.").

As Defendants have not pointed to any legal authority and provide no reasoned basis to support their injury-in-fact argument, the Court should not grant their request for a pre-motion conference. Ms. Prince's allegations have clearly established multiple bases for Article III standing, so Defendants' Rule 12(b)(1) motion cannot succeed. The Court should deny Defendants' request to brief the standing issue and allow discovery and other litigation on the merits of Ms. Prince's claims to proceed.

Respectfully submitted,

Sara Manaugh

Cc: All Counsel of Record (via NYSCEF)