```
                                                                          1

 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - -X
 3   LISA PRINCE,                    :
                                     : 25-CV-3679-NRM
 4             Plaintiff,            :
                                     :
 5      -against-                    : United States Courthouse
                                     : Brooklyn, New York
 6   TIVOLI BI LLC,                  :
                                     :
 7             Defendant.            : Tuesday, November 18, 2025
                                     :
 8                                   :
                                     :
 9                                   :
                                     :
10                                   :
     - - - - - - - - - - - - - - - -X
11        TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
                 BEFORE THE HONORABLE NATASHA C. MERLE
12               UNITED STATES DISTRICT COURT JUDGE

13                        A P P E A R A N C E S:

14   For the Plaintiff:       THE LAW OFFICE OF AHMAD KESHAVARZ
                                 16 Court Street, Suite 2600
15                               Brooklyn, New York 11241
                              BY:AHMAD KESHAVARZ, ESQ.
16
                              BROOKLYN LEGAL SERVICES
17                            TENANT RIGHTS COALITION
                                 375 Nostrand Avenue
18                               Brooklyn, New York 11216
                              BY: KAILYN GAINES, ESQ.
19
     For the Tivoli:          ROBERT L. ARLEO, ESQ. P.C.
20                               1345 Avenue of the Americas
                                 New York, New York 10105
21                            BY: ROBERT L. ARLEO, ESQ.

22   For the Defendant:       KAUFMAN DOLOWICH & VOLUCK LLP
                                 135 Crossways Park Drive
23                               Suite 201
                                 Woodbury, New York 11797
24                            BY: ADAM M. MARSHALL, ESQ.
     Court Reporter:  Nicole J. Sesta, RMR, CRR
25   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
```

Proceedings 2

1    THE COURTROOM DEPUTY:  Civil cause for a premotion
2 conference, Prince versus Tivoli BI LLC, 25-CV-3679.  I would
3 like to remind you all to say your name each time you speak.
4 Speak slowly and mute your phone when you're not speaking to
5 eliminate background noises.  Please state your appearances
6 for the record, starting with the plaintiff.
7    MR. KESHAVARZ:  Ahmad Keshavarz from the Law Offices
8 of Ahmad Keshavarz for plaintiff.  Good afternoon, Your Honor.
9    THE COURT:  Good afternoon.
10    MS. GAINES:  This is Kailyn Gaines, Brooklyn Legal
11 Services, for plaintiff, Lisa Prince.  Good afternoon.
12    THE COURT:  Good afternoon.
13    THE COURTROOM DEPUTY:  For the Cullen defendant.
14    MR. MARSHALL:  Good afternoon, Your Honor.  This is
15 Adam Marshall for Cullen Associates, PC, and Kevin Cullen.
16    THE COURT:  Good afternoon.
17    THE COURTROOM DEPUTY:  For the Tivoli defendants.
18    MR. ARLEO:  Good afternoon, Your Honor.  Robert
19 Arleo.
20    THE COURT:  Good afternoon, Mr. Arleo.  Good
21 afternoon, everyone.  We are meeting today to discuss the
22 landlord defendant anticipated motion to dismiss.  I have read
23 the parties' letters outlining the arguments they plan to
24 make.
25    I do telephone conferences to verify whether a

Nicole Sesta, RPR, RMR, CRR
Official Court Reporter

motion to dismiss practice is necessary so that we can be sure that the parties and the Court are making the best use of our resources, and I also hold these conferences to confirm early on that the parties, to the extent practical, are discussing resolution at this stage if they think that may be feasible.

Turning to the defendant's motion, as I stated, I reviewed the parties' letters and I want to preview my preliminary thoughts so that the parties can address their argument appropriately. I have concerns and I was skeptical that the landlord defendant can prevail on their anticipated motion to dismiss. Again, this is just your premotion conference letter.

The main argument raised by landlord defendants is that the plaintiff has not suffered an injury and, thus, does not have Article III standing. However, I think we can all agree that plaintiff's complaint alleges that landlord defendant caused her to spend $5.80 in subway fare in order to travel to Kings County Housing Court for the purpose of filing an answer in an eviction case filed by the defendant. And although this amount of money may seem small, pecuniary loss is a basis for Article III standing.

And I see no authority that there is a minimum threshold of money that a plaintiff must have lost to have Article III standing. I also have questions about defendant's argument that the subway fare of $5.80 can be compensated by a

Proceedings 4

1  rent credit that plaintiff received.  Plaintiff's complaint
2  explicitly alleges that the rent credit was merely in exchange
3  for withdrawing the motion for sanctions, not as compensation
4  for the subway fare.
5       So regardless of how the factfinder would ultimately
6  come out on this question, it seems clear to the Court that
7  this is a factual dispute that cannot be resolved on a motion
8  to dismiss.  Of course, all this is simply a preliminary
9  assessment of the parties' argument in their premotion
10 conference letter.  So I'm ready to hear from the parties and
11 for them to address this.  With that, let me start with the
12 landlord defendant, Mr. Arleo, if you would like to begin.
13      MR. ARLEO:  Thank you, Your Honor.  So the issue
14 here is the subway fare was related to the eviction
15 proceeding, and in the eviction proceeding even though it was
16 a sanctioned motion withdrawal at the end of the day, that
17 action got the plaintiff a free month's rent, which I would
18 argue offsets the subway.
19      There's something else I didn't put in my premotion
20 letter and it came up in another instance that I was
21 researching after I filed it, that the case law says that
22 incurring costs in conjunction with litigation does not create
23 Article III standing.  And that's usually in the context of
24 the actual federal law and hiring a lawyer, and I brought the
25 federal lawsuit.  My argument would be because it's Supreme

Proceedings    5

1  Court cases that says the subway cost was a cost associated
2  with litigation, and I would argue that those cases extend in
3  this instance.
4        THE COURT:  Let me ask you about that.  I'm aware of
5  those line of cases.  I believe those line of cases, don't
6  they usually deal with, perhaps, a plaintiff filing a
7  complaint, that fee, a plaintiff or an individual hiring an
8  attorney or something of that nature, I filed a case against
9  you, my injury for Article III standing is not the cost of me
10 filing the case against you.
11       But here, he had to respond to what he said is
12 frivolous and harassing complaints by the defendant, and part
13 of that required her to pay fare.  She's not asking -- she's
14 not saying the injury is something, you know, that she
15 instigated unrelated to the defendant, such as, again, filing
16 a complaint on her own.  She's saying in order to respond to
17 this harassment, she had to pay fare.
18       Is that not a distinction in the case law that you
19 just raised?
20       MR. ARLEO:  Well, thank you, Your Honor.  I'm glad
21 Your Honor is familiar with the case law.  It all comes under
22 the umbrella that the cost of litigation, the cost related to
23 the litigation, does not constitute Article III standing.  I
24 don't have any cases on point, but I would argue to extend
25 that principle here.  Because the subway fare was related to

Proceedings 6

the cost of a litigation, I would argue that those cases would apply here. I'm also not -- I respectfully see Your Honor's point and understand it -- but I still think she came out ahead based upon that litigation and that rent credit would cancel out the cost of the subway.

So I think on two points I would argue, and argue based upon what I've heard Your Honor say is what I'm going to have to do and, of course, I like these premotion conferences because they give me insight into how a judge feels about a certain argument.

So I guess I'm going to ask Your Honor to say -- I'm not asking for a ruling now, but I think I could make that argument and I don't think I would be wasting the Court's time if I did.

THE COURT: What about the plaintiff's argument concerning specific emotional harm. I know you cite the Maddox case to support that the emotional harm is inadequate, but I read the Maddox case differently than what you attempt to use it for. In Maddox it was that a perfunctory allegation of emotional distress, especially one wholly incommensurate could not confer standing. Why should I find the plaintiff's allegation of her emotional distress are perfunctory and commensurate?

MR. ARLEO: During one of our conferences, Mr. Keshavarz, plaintiff's counsel, agreed that -- and he can

Proceedings                                                            7

1  correct me if I'm wrong -- that these are garden variety
2  emotional distress claims.  They're typically found not to be
3  adequate for Article III standing.  It's not only the Maddox
4  case.  There's a whole bunch of cases that say lost sleep,
5  increased heart rate, anxiety.  I'm not here to minimize
6  anything the plaintiff has, but from the cases I read it's not
7  enough.
8           And I believe, and Mr. Keshavarz will correct me if
9  I'm wrong, that we've agreed these are garden variety
10 emotional distress claims.  I think I can get past that on the
11 standing.
12          THE COURT:  Okay.  So otherwise, your main argument
13 is that the cost of transportation had to do with the cost of
14 litigation and, therefore, that the cost of litigation cannot
15 -- you're saying that that transportation is a cost of
16 litigation and, therefore, it's not preferred standing.  That
17 would be the main argument you would rely on if you were to go
18 forward?
19          MR. ARLEO:  Yes, Your Honor.  Thank you for stating
20 that clearly.
21          THE COURT:  Okay.  Let me hear from plaintiff's
22 counsel.
23          MR. KESHAVARZ:  Good afternoon, Your Honor.  Ahmad
24 Keshavarz.  As to the issue of expenses, the Onfroy case
25 indicated that a parking fee, a copy cost, losing some time

1  from work, while I think the Court calls it de minimis are
2  sufficient for Article III standing.  And I believe they
3  quoted a Second Circuit case that said even quote unquote a
4  trifling unquote is sufficient for Article III standing.
5          So I think the case law in Onfroy is on our side.
6  I'm not aware -- so that's one thing.  As to this issue of
7  crediting, Your Honor articulated our position quite well.
8  The only thing I would also note is the landlord defendant are
9  still trying to collect $190,000 from our client, even after
10 they were served with a lawsuit.
11         They're sending demand letters saying we'll sue you
12 unless you pay $190,000.  I'm not sure what a $500 credit is
13 going to $190,000 when they're trying to collect on debt
14 that's time barred and from rent overcharge.  One thing that
15 they haven't mentioned at all in the letter, which I think is
16 surprising, is the common law analog to wrongful civil
17 litigation.
18         They sued this woman over 10 years three times now
19 and had an administrative hearing.  And the judge said that
20 not only is this frivolous, this is outrageous.  They
21 sanctioned them for one of the cases.  The language was
22 something along the lines of -- I don't have it in front of
23 me.  But you get the point.  The Court has even said as far as
24 to say how outrageous, how frivolous it was.
25         They're clearly filing suit for under a lease where

Proceedings                                                              9

1  there is no lease.  They had no right to file suit in that
2  venue.  She thinks she gets Section 8 payments, and they're
3  still suing her for the rent, even though it's being paid by
4  Section 8.  She's disabled.  She has heart problems.  She has
5  difficulty breathing.  They're trying to evict her and her
6  disabled nephew, who sued the guardian for.
7           This caused specific emotional distress that is far
8  beyond the Maddox case.  It's along the lines of the Benjamin
9  case that we've cited to.
10          THE COURT:  Can I just confirm that you didn't --
11 the plaintiff are not saying the emotional distress is a
12 garden variety emotional distress and you're saying that it is
13 adequate to confer standing?
14          MR. KESHAVARZ:  Well, they are two different things.
15 One, I'm not sure it is an emotional garden variety.  Two,
16 garden variety in the Second Circuit, as you know, allows for
17 damage awards of up to $125,000.  Some might characterize the
18 paragraphs of 164, 163, and 168 to merely be garden variety
19 emotional distress.
20          What I'm saying is, however you want to characterize
21 it, the facts are the facts.  So she alleged specific facts
22 about severe headaches, suicidal thoughts, inability to sleep,
23 fear of being homeless, change in weight, literally thinks of
24 jumping off a ledge, afraid she can't leave her daughter
25 alone.  However you want to characterize that, that is

Proceedings  10

1  specific enough to be Article III standing, as indicated in
2  the Maddox case was issues like the emotional distress was not
3  commensurate with the stimulus.  Well, she's being kicked out
4  of her home for ten years with her disabled nephew.  I think
5  that is sufficiently specific.  That's what I have, Your
6  Honor.  Thank you.
7           THE COURT:  Thank you.  I want to go back to how you
8  started where you were talking about the cases and the parking
9  fee and the copying.
10          Were those fees in those cases related to
11 litigation?  Was the parking fees related to litigation costs?
12 Was the copying fee related to litigation costs?
13          MR. KESHAVARZ:  Yes, Your Honor.  There was the
14 Onfroy case.  That was one of my cases.  The answer is yes.
15 The landlord filed two suits at the same time for the same
16 rent.  She had to go and defend a meritless case.  And the
17 sole expense was to defend the meritless case.  So it was
18 exactly out of pocket litigation costs to defend the suit for
19 which there was no basis.
20          THE COURT:  Understood.  Thank you.  Anything
21 further before I hear if the defendant has anything else to
22 add?  Defense counsel, Mr. Arleo, did you have anything to
23 add?
24          MR. ARLEO:  Other than, Your Honor asked the exact
25 question I was going to ask.  I don't know that case.  I'll

1  take a look at it.  Based on what I've heard today, Your
2  Honor, the best thing to do is for me to consider what I've
3  heard today, maybe speak to Mr. Keshavarz a little bit further
4  about this issue.
5          I mean everything he's saying is merits claim,
6  emotional distress claim, and I think the best thing to do is
7  if you could give me 48 hours to let you know if I'm going to
8  file this motion or not, because I can discuss with my client.
9  I would suggest that that might be the best course of action.
10 It could result with me telling you, Your Honor, I'm not going
11 to file.  I don't think I want to do that now based on what I
12 just heard, but a little more time would be very helpful.
13         THE COURT:  Okay.  So what I will do is based off of
14 your representations and our discussions, and what I said
15 about what I've read in the papers.  Obviously I cannot
16 prevent you, Mr. Arleo, from making your motion.  But I do
17 appreciate you taking the opportunity to look further into
18 these cases, specifically about if the argument is now costs
19 related to litigation and whether that can be adequate to
20 confer standing and also discussing it with your client so
21 that we can make productive use of everyone's resources, which
22 I do appreciate that.
23         I know you said 48 hours.  Actually, I'll give you
24 one week to update the Court so that you can take the time
25 necessary to consider whether you want to make this motion or

Proceedings 12

not.

One week from today, which is Tuesday, November 25th, please send me a letter indicating whether you want to move forward with your motion or not. If you do state that you will move forward with your motion, I will promptly set a briefing schedule for the parties.

MR. ARLEO: Thank you, Your Honor.

THE COURT: I know that we also have the other defendants on the line. I assume that they don't have anything to add to this issue. But I did want to discuss with all parties whether there has been any discussion concerning settlement. Let me hear from plaintiff's counsel if the parties have had any discussion related to settlement as of yet.

MR. KESHAVARZ: Thank you, Your Honor. We have had some discussions on settlement. I think one of the main issues is we have a punitive damage question that from the allegation in the complaint it seems quite serious. Even if my client only had garden variety emotional distress damages, the Second Circuit has upheld awards up to 125,000, if you have a repeated damage question for gross negligence, that could be quite substantial.

I think what we'd ask the Court is is for the defendants to turn over quickly, even before deadlines to respond that we have discovery, to give up the evidence. It

1  doesn't do us any good to throw a dart against the dartboard.
2  So the quickest way to resolve this is to not give us a wall
3  attorney-client privilege objections and blacked out
4  documents.
5           To cut to the chase, let's put the facts on the
6  table and then let's go to mediation.  But to do it in the
7  dark, it's not going to be helpful at all from
8  plaintiff's point of view.
9           THE COURT:  Okay.  Any defendant want to weigh in on
10 this at this time?  You're not required to.  I just wanted to
11 know where the parties were with settlement, but now that
12 plaintiff said something I'll give defendants a chance to
13 respond, if they choose to.
14          MR. ARLEO:  Your Honor, Robert Arleo.  I'm always
15 interested in trying to resolve cases.  I've looked at what
16 the claims are, what Mr. Keshavarz -- I've litigated with Mr.
17 Keshavarz before.  So I understand that this is not like a
18 cost of defense settlement.
19          I'll be happy to talk to him.  I'll talk to my
20 client and I'll talk to counsel for the attorney defendants
21 and see if there are any privilege issues, and do anything
22 that could get the case resolved.  I'm willing to go to
23 mediation also.  I'm fine with that.
24          THE COURT:  Anything from attorney defendant?
25          MR. MARSHALL:  Yes, Your Honor.  Thank you.  Adam

Proceedings 14

Marshall for the attorney defendants.  Certainly we're interested in serious settlement discussions when we conferenced the case with Judge Pollak in October.

Plaintiff was directed, not on a date certain, but to provide the defendants with a settlement demand as soon as they're able.  I will paraphrase what I said during that conference, which is assume everything in your amended complaint is true.  What is your demand?  It's simply not possible no matter what counsel might argue that plaintiff doesn't have an idea what the case is worth, if all the allegations in the pleading are true.

And plaintiff has a different conception of what Second Circuit law provides in terms of damages.  That's all fine.  Those are points but it doesn't negate one's ability to provide a settlement demand if we're not asking for a settlement demand that's predicated on disputed facts, just what they assume to be the case in the amended complaint.

So that's all that the attorney defendants want right now, to just get the ball rolling, and we haven't gotten that.  I think that would be very useful.

THE COURT:  I see.  Plaintiff wants discovery before making a demand; is that correct?  Am I understanding correctly from plaintiff's counsel?

MR. KESHAVARZ:  Correct.

THE COURT:  Okay.  I do think it would be useful for

1   the parties to begin conferring perhaps either with a
2   magistrate judge or with a mediator concerning settlement.  I
3   know that there's an initial conference and there's currently
4   a schedule as to discovery.
5         I believe the parties have already -- or you were
6   scheduled to do document requests and interrogatories and
7   responses are due beginning of December.  I'm not sure if any
8   of that has actually begun, or if plaintiff has received
9   anything yet.  But nevertheless -- go ahead.
10        MR. KESHAVARZ:  This is Ahmad Keshavarz.  I
11  apologize.  You cut out.  I didn't realize you were still
12  speaking.  I apologize, Your Honor.
13        THE COURT:  Go ahead.
14        MR. KESHAVARZ:  We have compounded written
15  discovery.  We haven't received a response yet.  The deadline
16  to respond has not passed yet.  I don't have the exact date in
17  front of me.
18        THE COURT:  I believe it's December 8th.  I
19  understand that the parties may think different things are
20  necessary before they can even begin discussing settlement.
21  Magistrate judges are very good at figuring that out and
22  working with the parties.  If plaintiff seeks some sort of
23  limited discovery would be helpful in order to get the ball
24  rolling on settlement, I would like you all to have that
25  conversation with the magistrate judge.

Proceedings 16

1 But, again, I can't force you to do that at this
2 point. So by November 25th, that same date that Mr. Arleo is
3 going to let me know whether he would like to file a motion or
4 not, I would like the parties to send me a joint letter
5 whether you want to be referred to the magistrate judge to
6 begin discussions of settlement.
7 If you think that discussion with the magistrate
8 judge would be fruitful, and I understand again plaintiff's
9 concern about having some discovery, but that is something you
10 could discuss with the magistrate judge if you think that
11 would be fruitful or help further your discussions even
12 further. So by November 25th, please let me know in a joint
13 letter whether you want to be referred to the magistrate
14 judge.
15 You don't have to tell me if one party wants to and
16 another party doesn't. I don't need to know that. Just let
17 me know if the parties are willing to be referred to the MJ at
18 this time. Anything additional?
19 MR. KESHAVARZ: Nothing further, Your Honor.
20 MR. ARLEO: Nothing. Your Honor. I want to bring a
21 quick point. As an attorney practicing 35 years, I misspelled
22 Your Honor's name in one of my letters and that's inexcusable.
23 I apologize for that and it won't happen again.
24 THE COURT: I appreciate that, Mr. Arleo. Anything
25 from attorney defendants?

Proceedings 17

1    MR. MARSHALL: Adam Marshall for the attorney
2 defendants. No. Thank you, Your Honor. That's it for us.
3    THE COURT: Thank you, all. Have a good day. We're
4 adjourned.
5    (Proceedings adjourned.)

Nicole Sesta, RPR, RMR, CRR
Official Court Reporter