**KAUFMAN | DOLOWICH**

Kaufman Dolowich LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797

Telephone: 516.681.1100

www.kaufmandolowich.com

**Adam M. Marshall**
amarshall@kaufmandolowich.com

July 17, 2026

**VIA ECF**
Honorable Peggy Cross-Goldenberg, U.S.M.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   *Prince v. Tivoli BI LLC, et al.*
> *Case No. 1:25-cv-3679 (NCM)(PCG)*

Dear Judge Cross-Goldenberg:

This firm represents defendants Cullen & Associates, P.C. and Kevin Cullen (collectively, the "Cullen Defendants") in the above matter.  Together with counsel for Plaintiff Lisa Prince ("Plaintiff" or "Prince"), we respectfully submit this joint letter.  The Cullen Defendants request an informal discovery conference pursuant to Local Rule 37.2 and this Court's Individual Rules.

The Cullen Defendants contend that a conference is necessary due Prince's ongoing failure to fully supplement her responses to the Cullen Defendants' First Set of Interrogatories (the "Interrogatories") and First Requests for Production of Documents (the "RFPs") and produce a privilege log as previously agreed.  The Cullen Defendants further contend that Prince has now waived privilege for withheld documents and seek an order compelling Prince to produce all outstanding document discovery and interrogatory responses by a date certain.  Prince disagrees.

## A.       General Background[1]

Prince commenced this action on July 2, 2025, asserting claims against her landlord, Tivoli BI LLC ("Tivoli"), its managing agent, Mel Management Corp. d/b/a Stellar Management ("Stellar") (collectively, the "Landlord Defendants"), and their outside counsel, the Cullen Defendants.  A First Amended Complaint ("Amended Complaint") was filed on October 3, 2025. (ECF Doc. 34).

The focus of the Amended Complaint is a nonpayment proceeding that the Cullen Defendants filed against Prince on behalf of Tivoli in July 2024 (the "2024 Lawsuit").  The 2024 Lawsuit sought $5,483.00 in allegedly unpaid rent.  Prince, represented by Brooklyn Legal Services ("BLS"), filed a motion to dismiss in March 2025 attaching proof of prior payment for her "tenant share" of the rent at issue.  The 2024 Lawsuit was discontinued by stipulation in July 2025, with Prince receiving a $500 rent credit.  Prince alleges that the 2024 Lawsuit was part of a

---

[1] Sections A and B of this letter were drafted by counsel for the Cullen Defendants alone to provide the Court with a summary of the claims and efforts to confer and resolve the dispute without judicial intervention, as the Court's Individual Rules require.  The Cullen Defendants' position on the proposed motion to compel is addressed in Section C.  Plaintiff's Position begins on page 4.

Hon. Peggy Cross-Goldenberg, U.S.MJ.
Case No. 1:25-cv-3679
Page 2 of 5

years-long campaign to evict her from the subject apartment, featuring prior court proceedings and administrative proceeding before the New York City Department of Housing Preservation & Development ("HPD").  She further alleges that the 2024 Lawsuit caused her emotional distress, exacerbated preexisting medical conditions and forced her to incur out-of-pocket expenses.

As against the Cullen Defendants, Prince asserts statutory claims under the federal Fair Debt Collection Practices Act; New York General Business Law § 349; and New York Judiciary Law § 487.  She also asserts a claim for "negligence *per se* and gross negligence."  She alleges actual damages in the form of emotional distress

B.      **History of the Current Discovery Dispute**

The Cullen Defendants served the Interrogatories and RFPs on January 20, 2026.  Copies are attached hereto as Exhibit "A".

Prince served her responses on April 16, 2026.  Copies of the responses, without the accompanying document production, are attached hereto as Exhibit "B".

On April 23, 2026, counsel for the Cullen Defendants emailed Prince's counsel a summary of deficiencies in Prince's discovery responses and sought to meet and confer.  A copy of the April 23 email is attached hereto as Exhibit "C".

Counsel met and conferred telephonically on May 20, 2026.  At that time, Prince agreed that she would produce the following: (1) a verification for Prince's responses to the Interrogatories; (2) an itemization of the monetary damages Prince allegedly sustained as a result of Defendants' actions; (3) documents demonstrating all such monetary damages; (4) documents demonstrating Prince's other alleged actual damages; (5) the retainer agreement between Prince and BLS concerning the 2024 Lawsuit; (6) Prince's social media posts since September 1, 2023; (7) executed HIPAA authorizations for the release of her medical records by individual doctors who treated Prince for various medical conditions; and (8) a privilege log.

This agreement was memorialized in drafts of the joint status report this Court ordered the parties to submit by May 22, 2026.  However, for reasons having nothing to do with the Cullen Defendants, that status report was never filed.  A draft of the report executed by the attorneys for Prince and Cullen Defendants on May 28, 2026 is attached hereto as Exhibit "D".  Therein, Prince agreed to produce the above items by June 3, 2026.  (Exhibit "D" at pp. 1-2).

Despite repeated follow up, Prince produced nothing more until July 1, 2026, when her counsel emailed HIPAA authorizations for Prince's doctors and three (3) screenshots from Prince's Instagram account.[2]

On July 2, 2026, counsel for the Cullen Defendants emailed Prince's counsel again to demand that Prince produce her privilege log and all outstanding discovery by July 7, 2026 to avoid motion practice.

---

[2] Prince's counsel has represented that the screenshots depict all responsive social media posts.

Hon. Peggy Cross-Goldenberg, U.S.MJ.
Case No. 1:25-cv-3679
Page 3 of 5

Prince's counsel responded on July 8, 2026, claiming for the first time that the BLS retainer agreement for the 2024 Lawsuit could not be located "[a]fter diligent & reasonable search" and that no privilege log would be forthcoming because, "[a]fter review, we do not believe that of (sic) communications between BLS & Ms. Prince are relevant." A copy of the email string is attached hereto as Exhibit "E".

Prince provided no date by which she would supplement the other outstanding items.

**C.      The Cullen Defendants' Position on the Proposed Motion to Compel**

First, judicial intervention is necessary because Prince has shown that she will not comply with deadlines contained in private agreements between counsel, even when the deadlines are proposed by Prince. The Cullen Defendants' hope is that Prince will be more respectful of a Court order setting a final date for Prince to produce the balance of outstanding discovery.

Second, it is well settled that a party's "[f]ailure to produce a privilege log 'may result in waiver of the privilege claims." GateGuard, Inc. v. Amazon.com Inc., 2024 WL 3952145, at *2 (S.D.N.Y. Aug. 27, 2024) (collecting cases). Here, the Cullen Defendants' RFP No. 5 specifically sought "[c]ommunications between [Prince] and BLS, between September 1, 2023 and July 2, 2025" concerning "(a) the Apartment; (b) the 2024 Lawsuit; [(c)] the 2017 Lawsuit; [(d)] the 2016 Lawsuit; [(e)] the HPD Proceedings; [(f)] the Landlord Defendants; and [(g)] the Cullen Defendants." (Exhibit "A" [RFPs] at p. 8). Prince's *sole* objection to RFP No. 5 was that "the documents requested are covered by Attorney-Client and work product privileges." (Exhibit "B" [RFP Responses] at p. 7). There is no need to debate whether the documents are *relevant* – though they clearly are – because no relevance objection was interposed and any such belated objection has been waived. Tedaldi v. Am. Paving Inc., 2025 WL 1349033, at *2 (E.D.N.Y. Apr. 23, 2025) ("'It is well established that by failing to respond or object to a discovery request in a timely manner, a party waives any objection which may have been available.'") (citation omitted).

The net effect is that, almost three months after she served her initial discovery responses, Prince is *refusing* to provide a privilege log for an untold number of responsive documents that Prince previously conceded were relevant. This Court should treat Prince's conduct as a waiver of any applicable privilege and direct her to produce all responsive communications with BLS. Micillo v. Liddle & Robinson LLP, 2016 WL 2997507, at *3 (S.D.N.Y. May 23, 2016) (non-party waived privilege "by waiting over three months to serve anything approximating a privilege log, and failing to proffer any explanation or excuse for that delay"). At minimum, Prince should be ordered to serve a complete privilege log for all documents responsive to RFP No. 5 within days.

Third, although the Cullen Defendants recognize that Prince cannot be compelled to produce a document that is no longer within her possession, custody or control, the disappearance of the BLS retainer agreement for the 2024 Lawsuit is very peculiar. At no point prior to July 8, 2026 did Prince's counsel suggest that that the retainer agreement was missing. Moreover, it seems doubtful that a truly "diligent & reasonable search" would have failed to unearth a retainer agreement that was executed within the last two years. Accordingly, the Cullen Defendants ask that Prince and her counsel be ordered to serve declarations that "detail the good faith search efforts taken to obtain the requested document[], explaining, at a minimum, where [the retainer

Hon. Peggy Cross-Goldenberg, U.S.M.J.
Case No. 1:25-cv-3679
Page 4 of 5

agreement] [was] likely to be kept, what efforts were made to preserve [it], whether [such] records were routinely destroyed, or whether a search has been conducted in every location where [the retainer agreement] [was] likely to be found[.]" Tedaldi, 2025 WL 2597205, at *3.

## Plaintiff's Position

Plaintiff opposes Defendants' request for an Informal Discovery Conference and asks the Court to dissuade them from filing their proposed Motion to Compel.

Attorney Defendants argue that, by agreeing to produce a privilege log, Plaintiff *implied* that certain communications between BLS and Ms. Prince, responsive to Defendants' RFP No. 5, were relevant to the case. The fact is this: Plaintiff never conceded that certain communications between BLS and Ms. Prince were relevant.

Any representations about a privilege log made during the May 20, 2026 meet and confer were made effort to cooperate with the Defendants in the discovery process. These statements were made with the knowledge available to Plaintiff at the time of the conference. After the May 20, 2026 phone call, Plaintiff's counsel again reviewed all communications responsive to RFP No. 5. Plaintiff's counsel determined, after this further review, that no communications were indeed relevant to the instant case. Plaintiff's counsel then told Defendants that she would not be producing a privilege log. Plaintiff did offer to provide the date on which Ms. Prince first got in contact with BLS about the July 2024 lawsuit, to the extent that Defendants sought the communications in order to understand when Ms. Prince became represented in the nonpayment case. Plaintiff understand why Defendants may believe that *this* information is relevant.

Defendants cite Tedaldi v. Am. Paving Inc., for the proposition that Plaintiff has waived her right to assert a relevance objection to the RFP because she did not state this specific objection in her discovery responses (2025 WL 1349033, at *2 (E.D.N.Y. Apr. 23, 2025)). But neither Tedaldi nor the cases Tedaldi cites stand for this proposition. Rather, those cases hold that where a party fails to file *any* timely responses or objections to discovery requests, the party waives all objections which may have been available. As Plaintiff did timely respond and object to the discovery requests, no such waiver applies.

Importantly, "[t]he burden of demonstrating relevance is on the party seeking discovery." Gilead Scis., Inc. v. Safe Chain Sols. LLC, 345 F.R.D. 12, 20 (E.D.N.Y. 2023) (citations omitted). Defendants have not attempted to demonstrate the relevance of the information sought. Plaintiff does not recall Defendants making a relevance argument during the May 20, 2026 meet and confer. Defendants did not explain why they believed the communications were relevant in their response to Plaintiff's July 8 email. Nor have Defendants attempted to articulate a relevance argument to the Court above. As Defendants have not met their burden, Plaintiff should not be required to turn over materials or a privilege log describing communications which have no apparent relevance to the case.

As to the retainer, Plaintiff similarly agreed during the May 20, 2026 meet and confer to turn over the retainer agreement between BLS and Ms. Prince for the 2024 nonpayment lawsuit. Plaintiff's counsel made this agreement prior to searching for the retainer. As it is BLS's standard

Hon. Peggy Cross-Goldenberg, U.S.MJ.
Case No. 1:25-cv-3679
Page 5 of 5

practice to have clients sign retainers, Plaintiff's counsel assumed that a signed retainer for this case existed somewhere within our files.  After the meet and confer, Plaintiff's counsel searched Legal Services New York City's online case management system, Legal Server, where retainer agreements are typically uploaded and stored, but found no retainer attached to Ms. Prince's 2024 nonpayment case file.  Plaintiff's counsel also searched BLS's online file management system and physical files for Ms. Prince at the BLS office.  The retainer was not located during these searches. BLS believes the retainer issue must have occurred during a staff turnover on this case.  Had Plaintiff found the retainer, she would have turned it over to Defendants as agreed.

The Court should not order a conference on the sole live issue in the letter: whether Plaintiff must provide a privilege log for attorney-client communications.  Plaintiff states that these communications are not relevant.  Defendants themselves have not articulated a basis for relevance.  Plaintiff should remain entitled to oppose their request.

We thank the Court for its consideration.

Respectfully,
Kaufman Dolowich LLP

By:

Adam M. Marshall, Esq.
*Attorneys for Defendants*
*Cullen & Associates, P.C. and Kevin Cullen*

/s/ Kailyn Gaines

Kailyn Gaines
Brooklyn Legal Services- Tenant Rights Coalition
1709 St Marks Ave, 2nd Floor
Brooklyn, NY 11233
718-233-6418
kgaines@lsnyc.org

cc:      All counsel via NYSCEF