# EXHIBIT "C"

Case 1:25-cv-03679-NCM-PCG     Document 54-3     Filed 07/17/26     Page 1 of 6 PageID #: 691

**Adam M. Marshall**

| | |
|---|---|
| **Subject:** | Prince v. Tivoli BI, LLC, et al. - Plaintiff's Deficient Discovery Responses |
| **Date:** | Thursday, April 23, 2026 at 5:52:46 PM Eastern Daylight Time |
| **From:** | Adam M. Marshall <amarshall@kaufmandolowich.com> |
| **To:** | Kailyn Gaines <kgaines@lsnyc.org>, Robert Arleo <robertarleo@gmail.com> |
| **CC:** | Samar Katnani <skatnani@lsnyc.org>, AHMAD KESHAVARZ <ahmad@newyorkconsumerattorney.com>, Kevin Gartland <kevin@newyorkconsumerattorney.com>, Brett A. Scher <bscher@kaufmandolowich.com> |
| **Attachments:** | image911767.png, image830327.png, image530376.png, image255671.png, image723472.png, image455002.png |

Kailyn,

Please let me know your side's availability for Monday and Tuesday to meet and confer regarding Plaintiff's responses to the Cullen Defendants' discovery requests.

Below is a rundown of the deficiencies:

Plaintiff's interrogatory responses are not verified.

Plaintiff's interrogatory responses repeatedly refer to her initial disclosures, without elaboration, in lieu of identifying specific individuals with whom Plaintiff communicated regarding defined subject matter, and specific individuals who personally observed Plaintiff experiencing emotional distress.  The initial disclosures do not address those topics with sufficient particularity, other than identifying possible witnesses for emotional distress, and even then no contact information is provided for those persons.

Plaintiff objected to interrogatory no. 1 on the ground that it supposedly "has not limitation in time."  The default time period for all interrogatories per instruction no. 8 is January 1, 2016 through the present.  Please confirm whether Plaintiff's response includes all persons for that defined period.

Plaintiff's response to interrogatory no. 2 identifies one social media account belonging to Plaintiff, on Instagram, under the username "oneeye-patch."  Please confirm the spelling.  Did Plaintiff mean "oneeye_patch" instead?  We do not see any Instagram accounts with the spelling provided.  Also, please confirm that Plaintiff has no other social media accounts.

Plaintiff has objected to interrogatory no. 3 on the ground that it is supposedly not limited in time or scope.  Again, the time frame is January 1, 2016 forward.  The scope is "civil actions" to which Plaintiff has been a party.  Please advise whether Plaintiff's response needs to be amended.

1 of 5

Plaintiff's response to interrogatory no. 11 fails to itemize her monetary damages and instead refers to her initial disclosures (which also fail to provide responsive information). Plaintiff has cited "inter alia, transportation costs and lost time for travel back and forth to Kings County Housing Court and to meetings and consultations with her attorneys related to, and in defense of, the baseless underlying collection and eviction lawsuits, and the debt allegedly owed. This specifically includes per trip paid subway fare." Again, the Cullen Defendants are entitled to a complete itemization of the monetary damages, rather than a partial list, and the associated dollar amounts for each item.

Turning to the document requests, Plaintiff has failed to refer to specific Bates-ranges of documents in any of her responses.

Plaintiff has refused to produce responsive communications with BLS (request no. 5), or even a log of those communications — citing the attorney-client and work product privileges. This blanket assertion of privilege is improper without a log. Moreover, the very existence of communications between Plaintiff and counsel during the defined period is highly relevant to issues of materiality and damages.

Plaintiff has refused to produce communications with persons other health care providers on the subject of her alleged disabilities, chronic conditions and distress (request no. 6), claiming that such communications are irrelevant, intrusive and disproportionate to the needs of the case. The relevance is obvious given Plaintiff's allegations of distress and exacerbated medical conditions. Plaintiff also placed all such communications at issue. Plaintiff cannot produce responsive communications with one type of person (health care providers) while refusing to produce nonprivileged communications with others on the same subject matter.

I note that Plaintiff's objection to request no. 6 also suggests that the "amount in controversy" in this action is minimal. The amount in controversy *should be minimal,* but Plaintiff has given every indication that she seeks exorbitant sums for what you have described as "severe emotional distress." If Plaintiff maintains her objection to request no. 6 (or any other request) based on the amount in controversy, we ask that Plaintiff specify the dollar amount she seeks and/or expects to be awarded for emotional distress so that the Court has a complete picture during motion practice.

Plaintiff has feigned confusion in asserting that request no. 7 "makes no sense" and seeks "a document concerning a document." What the request actually seeks is documents concerning Plaintiff's communications with specific persons and subject matter, including "notes [Plaintiff] and other persons created." For example, if Plaintiff created notes memorializing conversations with Stellar Management regarding the 2024 lawsuit, those must be produced.

Plaintiff has refused to produce retainer agreements with BLS and Keshavarz (request nos.

9 and 10) under the mistaken belief that such documents are only relevant to assessing legal fees.  That is not their only purpose.  The Complaint implies that Plaintiff did not engage or even consult counsel for the 2024 lawsuit until shortly before BLS emailed Cullen & Associates on February 25, 2025, and that as a result Plaintiff suffered from all sorts of irrational fears — for months beforehand— that she could be locked out of the apartment at any moment.  The BLS retainer agreement for the 2024 lawsuit will help reveal when Plaintiff actually obtained legal representation.  Moreover, the BLS and Keshavarz retainer agreements for this action will help demonstrate when Plaintiff came to believe that she was entitled to damages for the defendants' conduct in the 2024 lawsuit, which would further undercut any claim of ongoing emotional distress.

In response to request no. 9, Plaintiff states that she will produce responsive documents concerning her monetary damages "under a separate cover."  However, there are no such documents contained within the production transmitted on April 16.

In response to request nos. 11 through 14, which seek documents concerning the medical conditions and distress Plaintiff allegedly suffered from during the 2024 lawsuit, Plaintiff has refused to produce anything beyond a HIPAA authorization and documents "previously provided to courts, agencies or Defendants."  It's not clear what precise documents Plaintiff is referring to, since no Bates-numbers are cited, but the proposed limitation is improper.  As far as we can tell, all the conclusory one and two-sentence doctor's notes Plaintiff has produced thus far predate the starting point for the requests (September 1, 2023) by multiple years.

As to request no. 15, Plaintiff has produced one (1) HIPAA release for New York Presbyterian Brooklyn Methodist Hospital.  Are the four doctors identified in Plaintiff's response to interrogatory no. 8 all affiliated with that one hospital?  Even if they are, Plaintiff should provide individual releases for each doctor to ensure that there is no delay in obtaining the records.

Plaintiff has refused to produce any social media postings made since September 1, 2023 (request no. 16), claiming overbreadth and an invasion of privacy.  Clearly, social media posts are relevant to assessing whether Plaintiff was in fact homebound, paralyzed in fear, during the pendency of the 2024 lawsuit.

Plaintiff agreed to provide "other" documents "under separate cover" demonstrating her actual damages (request no. 17), but none were included in the April 16 production.


Thanks,
Adam

**Adam M. Marshall**
*Attorney At Law*



# KAUFMAN | DOLOWICH

135 Crossways Park Drive, Suite 201
Woodbury, NY 11797

Direct:    516-283-8731
Cell:      516-557-1460
Email:   amarshall@kaufmandolowich.com

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.
Please consider the environment before printing.

**From:** Kailyn Gaines <kgaines@lsnyc.org>
**Date:** Thursday, April 16, 2026 at 7:21 PM
**To:** Adam M. Marshall <amarshall@kaufmandolowich.com>, Robert Arleo <robertarleo@gmail.com>
**Cc:** Samar Katnani <skatnani@lsnyc.org>, AHMAD KESHAVARZ <ahmad@newyorkconsumerattorney.com>, Kevin Gartland <kevin@newyorkconsumerattorney.com>
**Subject:** Lisa Prince Written Discovery Responses & Production

[EXTERNAL SENDER]
Counsel,

I'm sending along Ms. Prince's written discovery responses and production of documents. Please find our written responses and the bulk of our production at this Dropbox link:
https://www.dropbox.com/scl/fo/hd33x5rpb0kqd66t7ub1s/ABeBpqMAjt76LyLlRl_QN2U?rlkey=dkhx0ssr81g7vxa5r9y12srp9&st=f630qwn8&dl=0

I have attached a few email attachments which weren't uploading to Dropbox.

4 of 5

We will provide signed medical release forms at the status conference next week.  We are still working to produce any relevant text messages between Ms. Prince and management. We will produce those once collected.


Best,
Kailyn Gaines

_____

Kailyn Gaines (she/her)
Staff Attorney, Tenant Rights Coalition
Brooklyn Legal Services
1709 St. Marks Avenue, 2nd Floor
Brooklyn, NY 11233
Phone: (718) 233-6418
Email: kgaines@lsnyc.org


 **Demand Justice.**

*This e-mail is sent by a law firm and contains information that may be privileged and confidential and may also be covered by the Health Insurance Portability and Accountability Act (HIPAA).  If you are not the intended recipient, do not disseminate; please delete the e-mail and notify us immediately.*

🌲 *Please consider the environment before printing this email message.*


**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.