**AHMAD KESHAVARZ**
*Attorney at Law*

16 COURT STREET, #2600
BROOKLYN, NY 11241

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900
Fax: (877) 496-7809

November 4, 2026

**VIA ECF**

Honorable Peggy Cross-Goldenberg
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: Joint Discovery Status Report**
**Prince v. Tivoli BI, LLC, et al.**
**Case No. 1:25-cv-3679 (ncm)(pcg)**

Dear Judge Cross-Goldenberg:

Pursuant to Your Honor's October 23, 2026 ECF Order, the undersigned attorneys for Plaintiff Lisa Prince ("Plaintiff"), Defendants Tivoli BI LLC and Mel Management Corp. d/b/a Stellar Management (collectively, the "Landlord Defendants") and Defendants Cullen & Associates, P.C. and Kevin Cullen (collectively, the "Attorney Defendants," and, together with Landlord Defendants, "Defendants") submit the following Joint Discovery Status Letter. The Parties apologize to the Court for their tardiness of this letter.

**Agreements of the Parties:**

After many disputes, the Parties agreed to the deposition of the Cullen Defendants on November 17. If, based on the testimony of Cullen, Plaintiff believes she still needs the continued Fed. R. Civ. P. 30(b)(6) witness, or a different Landlord witness. Plaintiff will seek the deposition. The Landlord Defendants will likely oppose. After the issue of an additional Landlord deposition is resolved, Defendants will take the deposition of Plaintiff.

**Plaintiff's Position**

Plaintiff remains concerned about Defendants' engagement with the discovery process in general. In the period since the last status letter and the joint letter motion to compel, there have been extensive issues with the Defendants scheduling depositions and obtaining complete document production from the Landlord Defendants.

Plaintiff seeks an order that:

1. Requires that the Landlord Defendants produce the following documents:

a. Any and all relevant documents from physical files related to the subject premises, including, but not limited to, billing statements, rent receipts, arrears notices, incident reports, emails between Plaintiff and the Landlord Defendants;
b. Copies of the "rent receipt book";
c. Charge and receipt forms that are linked to the ledger in Yardi;
d. Emails between employees and agents of the Landlord Defendants and emails between employees and agents of the Landlord Defendants and HPD Section 8; and
e. All work orders for the subject premises.
f. Insurance policies and coverage correspondence from Landlord Defendants.

**a. Depositions**

The Defendants have repeatedly failed to comply with scheduling requests or even previously scheduled depositions. These problems have been persistent throughout the discovery process.

Where the Landlord Defendants have produced witnesses, they have been unprepared or revealed systemic failures to produce documentation. To date, Landlord Defendants have produced two 30(b)(6) witnesses for deposition. As Your Honor may recall, Arianit Jakupaj, Landlord Defendant's first 30(b)(6) witness, was inadequately prepared. After Your Honor directed Landlord Defendants on September 2, 2026 to "produce an appropriate witness for Plaintiff's continued 30(b)(6) deposition," the Landlord Defendants produced Jessica Seepersad as a second 30(b)(6) witness on September 30 2026—the same witness the Landlord Defendants previously claimed did not have relevant knowledge. September 2, 2026 ECF Order. Ms. Seepersad was similarly unprepared to testify as a 30(b)(6) witness. *See* **Exh. A** (September 30, 2026 Jessica Ann Seepersad Dep. Tr). Ms. Seepersad could not speak to any of the Landlord Defendant's internal processes regarding court proceedings, how decisions are made to file a lawsuit—both generally and with regard to the 2024 nonpayment proceeding central to this case—or other enumerated topics in Plaintiff's Notices of Deposition. As a result, despite two 30(b)(6) depositions, and a deposition of Landlord Defendants' former employee Lorna Blackman, Plaintiff is still not aware of basic information such as (1) who from Landlord Defendants made the decision to commence the 2024 Nonpayment proceeding against Plaintiff, or (2) why Ms. Prince was refused a lease after an administrative decision in 2020 awarded her succession rights. Indeed, even after the Court ordered the Landlord Defendants to provide a separate corporate representative to answer 30(b)(6) topics 15, 18, 19, 20, and 21,[1] the second corporate representative was still not prepared to answer the questions on those topics. *See*

[1] Those topics, listed in Plaintiff's Motion to Compel, Dkt. No. 56 p. 5, were:
- #15- the decision to sue Ms. Prince even though she had paid her rent;
- #16- how much the Attorney Defendants were paid;
- #17- the identity of the persons who issued the billing statements;
- #18, 19- the decision to seek rent for time when the Landlord refused to provide Ms. Prince with a lease;
- #20- the factual basis for making the decisions in topics 13-19, and identification of documents on which the decision was based;
- #21 -the decision to sue Ms. Prince for nonpayment during a time period when she did not have a lease (*See* Ex. H, Transcript of Arianit Jakupaj Deposition at 117:4-128:2).

September 2 ECF Order ("Defendants are directed to produce an appropriate witness for Plaintiff's continued 30(b)(6) deposition. The witness must be prepared to testify about information known or reasonably available to the organization."); and **Exh. B** (Plaintiff's Notice of Deposition, September 14, 2026) pp. 5, 6 (topics 15, 18, 19, 20, and 21 as renumbered). The Landlord Defendants claim that Plaintiff should reserve these questions for the Attorney Defendants; however, this position ignores the reality, to which Ms. Blackmun and Ms. Seepersad testified, that the internal legal department for the Landlord Defendants play a significant role in those decisions and therefore their 30(b)(6) witness must be compelled to be prepared to testify as to those topics. That said, Plaintiff is willing to agree to take the deposition of the Attorney Defendants first and determine thereafter if a further deposition of a Landlord Defendant 30(b)(6) on these topics be needed.

As for the Attorney Defendants, Plaintiff was informed for the first time on October 15, 2026, after multiple deposition notices, of a medical issue that had prevented Kevin Cullen's deposition. The Parties have now agreed to depose Kevin Cullen in his individual capacity and as a Rule 30(b)(6) witness for Cullen & Associates, P.C. on November 17, 2026.

Finally, at the conclusion of Ms. Seepersad's deposition, the Landlord Defendants' counsel represented that the Landlord Defendants now intended to depose Plaintiff immediately. **Exh. A.** at 124:12-125. Plaintiff's counsel reminded Landlord Defendants counsel that the parties had agreed, including on the record before the Court, to complete the deposition of the Defendants and then depose Plaintiff afterward. ***Id.*** at 125. The Landlord Defendant nonetheless has sought from Plaintiff over email a date to depose Plaintiff and is demanding that it take place in-person at the federal courthouse despite all previously conducted depositions being conducted virtually. **Exh. C** (October 7, 2026 email from counsel for the Landlord Defendants).

Plaintiff asks that the Court deny the Landlord Defendants' request that this Court order the deposition of Plaintiff. Plaintiff's position, and the agreement amongst the parties to date, remains unchanged; Plaintiff will make herself available for a deposition after the conclusion of the Attorney Defendants' and the Landlord Defendants' depositions.

Plaintiff is not aware of any authority that the deposition of a party must be taken at a courthouse. Indeed, Plaintiff requests in the first instance that the deposition be taken via Zoom– as in every other deposition in this case. Under Local Civil Rule 30.2, such a request will be presumptively granted. Local Rule 30.2. If the Landlord Defendants have a reason to defeat this presumption, they can make it. The fact that they "anticipate" the need for judicial intervention is unsupported and in and of itself is concerning. If intervention by the Court is required, a telephone call to chambers would be the mechanism, not walking into the courtroom. Accordingly, the location of the deposition would not change the manner in which the parties may seek relief from the Court.

Accordingly, Plaintiff requests that the Court set (1) a date certain for the deposition of Attorney Defendants, and (2) a subsequent date certain for the continued 30(b)(6) deposition of the Landlord Defendants.

**b. Document Production**

With respect to the issues with document production, both Jessica Seepersad and Lorna Blackman testified to entire categories of documents that the Landlord Defendants failed to produce. Lorna Blackman, a former employee of the Landlord Defendants, testified that Landlord Defendants' employees communicate about tenants both through text on work devices and through email. **Exh. D** (September 14, 2026 Lorna Blackman Dep. Tr.) 30:4-17; 33:21-25-34:1. To this day, there have been no text messages produced and only scant emails, primarily relating to the conduct of Christian Lee. It strains credulity that there were no emails or text messages regarding Plaintiff that are beyond the ambit of privilege when there have been over 10 years of litigation regarding the apartment and its members, years-long struggles regarding Plaintiff's entitlement to a lease, and Plaintiff's eventual receipt of a Section 8 Voucher. Furthermore, Ms. Blackman testified that, especially when the tenant is in court, communications between the Landlord Defendants and tenants were printed out and placed in the physical file. ***Id.***, 38:13-25-39:1. No such emails exist in the Landlord Defendants' document production.

Ms. Seepersad and Ms. Blackman both testified that two letters are sent out per month to the tenants. **Exh. A** (Seepersad Dep. Tr.), 30:7-25-31:1-3; **Exh. D** (Blackman Dep. Tr.), 100:4-12. The arrears notices are automatically generated by the Yardi system but stored in the physical file. **Exh. A** (Seepersad Dep. Tr.), 31:22-25-32:1-7, 34:13-18. Plaintiff has independently confirmed the nature and frequency of these letters. These letters are entirely absent from the Landlord Defendants production, despite demands that required the production in Plaintiff's document demands. Importantly, the Landlord Defendants have attempted to require on-site viewing of the physical files (those in storage and on site) despite Jessica Seepersad's testimony that she scanned and emailed these files to in-house counsel. Per Lorna Blackman's testimony, Jessica Seepersad is responsible for maintaining the files and putting the documents in storage. **Exh. D** (Blackman Dep. Tr.), 41:6-12.

The Landlord Defendants have also failed to turn over work-orders that should exist in the Yardi system. Despite Lisa Prince making numerous repairs requests over the 12 years she has resided in Tivoli Towers, and Lorna Blackman's and Arianit Jakupaj's testimony that repairs requests made during regular hours would result in work orders that would be in the Yardi system, the Landlord-Defendant's production includes very few work orders since 2014. **Exh. E** (Pages from July 9, 2026 Arianit Jakupaj Dep. Tr. and September 14, 2026 Lorna Blackman Dep. Tr.) Jakupaj 132:3-25-133:11-20, Blackman 20:20-23. Two of the work orders the Landlord Defendants provided were for routine inspections, two for the time prior to when Plaintiff resided in the apartment, and one, which Lisa Prince signed for in 2014, for the replacement of a lock. Lorna Blackman's testimony reveals that she actually met Plaintiff due to Plaintiff putting in a repairs request, which is not included in the Yardi production. **Exh. D** (Blackman Dep. Tr.), 45:10-22.

The most egregious of these failures was revealed through the testimony of Jessica Seepersad. Ms. Seepersad, while reviewing a ledger, testified that there are links in the ledger in the Yardi system that, when clicked, pull up information that shows when payments are made and to what month and year of rent they are applied. **Exh. A** (Seepersad Dep. Tr.), 98:4-25-99:1-24. For instance, Ms. Seepersad testified that the payments that Plaintiff made for months that the Landlord Defendants improperly sought in the 2024 Nonpayment case were applied to

alleged arrears from the beginning of 2014. Deposition of Jessica Sepersad, 103-104. At that time, the Landlord Defendants could not collect this debt as the statute of limitations had expired. *See* New York Civil Practice Law and Rules ("CPLR") § 213(2). The Landlord Defendant did not provide any of the documents or information that Ms. Seepersad discussed.

Despite testimony now in multiple depositions that indicate deficiencies in the Landlord Defendants' productions, the Landlord Defendant expects Plaintiff and the Court to be satisfied by "assurances" by in-house counsel that all relevant documentation has been produced. However, neither of the two 30(b)(6) witnesses for the Landlord Defendants could describe the process in which the document productions were prepared, nor could testify as to whether any other employee of the Landlord Defendants were required to search their emails. In fact, Mr. Jakupaj testified that he did not even search his own emails in preparation for the deposition. Assurances or not, the factual record supports a conclusion that the document production to date is incomplete.

With respect to the work orders, firstly, their likely existence but absence from the documents produced thus far by the Landlord Defendants is relevant because it calls into question the adequacy and completion of the productions overall. Moreover, while the case does not include breach of the implied warrant of habitability claims directly, the Landlord Defendants' treatment of Plaintiff and any failure to make required repairs is directly relevant to Plaintiff's harassment claims.

It is disingenuous for the Landlord Defendants to claim that they "offered" for Plaintiff to inspect relevant files onsite at the subject premises as some sort of a courtesy to Plaintiff or as a way to demonstrate compliance with production obligations. There was absolutely no reason to require Plaintiff or her counsel to review "upon request" the file. As Ms. Seepersad testified, the files were scanned and sent to the Landlord Defendants in-house counsel; such documents should have been electronically produced in the ordinary course.

Lastly, Plaintiff propounded requests for production for insurance documents. The Landlord Defendants did not object to the requests[2] but have not produced documents. These documents are particularly important because apparently there was an issue of insurance coverage by one or more carriers as to the Landlord Defendants prior to the appearance of counsel, and apparently there is a denial of coverage letter. Plaintiff seeks all policies and documents related to coverage.

---

[2] 11. Any insurance policies and declaration sheets, and renewals, that may cover the claims brought by way of this suit, regardless of whether you have forwarded this claim to your insurance carrier.

RESPONSE- See insurance policy attached herewith.

12. Correspondence regarding any insurance policy covering or potentially covering the claims brought in this suit, including the application for coverage and response from the carrier, if any.

RESPONSE- Plaintiffs are searching for emails which may be responsive to this request will supplement this response if emails are located.

Accordingly, Plaintiff seeks an order from the Court that requires that the Landlord Defendants produce (1) any and all relevant documents from physical files related to the subject premises, including, but not limited to, billing statements, rent receipts, arrears notices, incident reports, emails between Plaintiff and the Landlord Defendants; (2) copies of the "rent receipt book" (3) charge and receipt forms that are linked to the ledger in Yardi; (4) emails between employees and agents of the Landlord Defendants and emails between employees and agents of the Landlord Defendants and HPD Section 8; (4) all work orders for the subject premises; and (5) insurance policies and coverage letters.

**c. The Landlord Defendant's "Letter"**

The Landlord Defendants indeed sent a letter dated September 29, 2026 to the parties. While the Landlord Defendants claim that this letter "sets forth in detail why Plaintiff's claims have no legal basis," Plaintiff obviously disagrees with that assessment. Plaintiff has not felt it necessary to respond or engage in extra-judicial legal briefing that is more appropriately left for motion practice after the close of discovery. Nor does she have any obligation to do so. It is inappropriate for the Landlord Defendants to allege that Plaintiff's substantiated issues with their discovery and deponents has any end other than to prosecute her case as she is entitled.

**d. Plaintiff's Conclusion**

The Defendants have engaged in an ongoing practice to hinder Plaintiff's investigation into her claims. The Landlord Defendants have failed to provide documentation that Plaintiff demanded and that is clearly relevant to Plaintiff's claims without explanation. For those reasons, Plaintiff requests that the Court order the production of documents as outlined above.

Plaintiff additionally requests the Court to refer the parties to the Eastern District Mediation Program in November if possible, or, if not, in December. Plaintiff asks that the Court direct insurance adjusters for Defendants appear in-person to the extent the mediation occur in-person, or for the entire length of the mediation if conducted virtually. This is a reasonable path forward to the resolution that the Defendants claim they want. There is no reason for this Court, as the Attorney Defendants' request, to order Plaintiff to make a settlement demand outside of or before such mediation; a demand by any of the parties can be made in a mediation statement in advance of the mediation itself. Further, any of the Defendants are absolutely free to make a settlement offer themselves to demonstrate their stated desire to resolve the case—Plaintiff is not uniquely situated in her ability to make an offer. Plaintiff has laid out the actual and legal basis of her damages extensively in her initial disclosures, supported by legal authority that the Defendants do not challenge. However, the Attorney Defendants' request for a settlement offer is less about resolution and more about their desire to disclose such an offer in court filings, such as in opposition to a fee petition. If that was not the case, the Defendants would have responded to Plaintiff's request that they agree not to make any such disclosures if and should Plaintiff make an offer. Accordingly, mediation provides confidentiality and will better serve the achievement of resolution, something that all parties agree would be beneficial.

**Landlord Defendants' Position**

The allegations set forth in this joint letter by Plaintiff's attorneys are clearly designed to set forth discovery abuse claims which are demonstrably without merit. First and foremost is the false claim by Plaintiff's attorneys that "there have been extensive issues with scheduling depositions and obtaining complete document production from the Defendants." Nonsense. The Landlord Defendants have produced for depositions no less than three persons who are presently or formerly employed therein. At these depositions, these persons have been subjected to torturous questioning, much of it repetitive, de minimis and unnecessary. Thus, the claim "The Defendants have repeatedly failed to comply with scheduling requests or even previously scheduled depositions. These problems have been persistent throughout the discovery process." is patently baseless. Instead, the events to date regarding depositions evidence that Plaintiff's *multiple* attorneys are using the deposition discovery process to badger and harass Defendants into a large monetary settlement. Notably, this campaign is being waged before.

Plaintiff has been required to substantiate her claims by sitting for her own deposition, and

before Plaintiff has completed her own document production.

Plaintiff's attorneys claim "Where the Landlord Defendants have produced witnesses, they have been unprepared or revealed systemic failures to produce documentation." is belied by deposition transcripts. Despite the fact that the transcripts of those depositions would prove otherwise, most of the complaints advanced by Plaintiff's attorneys concern the decisions to commence legal action against Plaintiff and how much the attorneys Defendants were paid. Yet it is more than obvious that those questions should have been reserved for Defendant Kevin Cullen as the attorney who commenced the legal actions against Plaintiff as attorney for the Landlord Defendants.

Plaintiff's related assertion that she "was refused a lease after an administrative decision in 2020 awarded her succession rights" is wrong. HPD's determination letter bears a June 2020 date, during the period in which HPD's offices were closed because of COVID-19, but it was not transmitted to the Landlord Defendants until July 2022. Upon receipt, a lease was offered to Plaintiff. Also, the fact that HPD's determination as to Plaintiff's tenancy in June 2020 undermines the argument by Plaintiff that she was owed a lease since 2014.

In any event, Plaintiff now states that she is willing to take the deposition of the Attorney Defendants first and to determine thereafter whether any further 30(b)(6) deposition of the Landlord Defendants is needed. The Landlord Defendants agree with that sequence. There is accordingly no present dispute concerning the Landlord Defendants' 30(b)(6) witnesses for the Court to resolve.

In regard to documents, the landlord Defendants have produced mounds of documentary evidence in response to Plaintiff's discovery demands. Thus, the allegations to the contrary by Plaintiff's attorneys are baseless. Much of Plaintiff's attorneys claims of discovery abuse by the Landlord Defendants concern documents related to billings that were sent to Plaintiff. Plaintiff's attorneys also complain about the alleged failure to produce texts and emails. There are no text messages concerning Plaintiff. The Landlord Defendants have, in preparing this letter, located a limited number of additional internal emails concerning the apartment, including emails exchanged with HPD concerning Plaintiff's Section 8 voucher, and will supplement their

production with the non-privileged emails promptly. However, none of the referenced emails bears on the billing conduct that is the subject of the Amended Complaint.

Plaintiff's attorneys' claim that the Landlord Defendants "attempted to require on-site viewing of the physical files" is false. The Landlord Defendants required nothing improper in responding to Plaintiff's requests for production of documents. As Ms. Seepersad testified, the physical file was scanned and sent to in-house counsel, and it was produced electronically in the ordinary course. The on-site inspection was offered in addition to that production, as a courtesy, so that Plaintiff could satisfy herself that nothing had been withheld. Plaintiff's attorneys now ask the Court to order production of "any and all relevant documents from physical files." The Landlord Defendants will make every document in the physical file available and will re-send the scanned file if Plaintiff's attorneys cannot locate it. The "rent receipt book" that Plaintiff's attorneys demand does not exist, but it will show information already provided to Plaintiff in the form of the rent ledger. The "charge and receipt forms" referenced in Ms. Seepersad's testimony are not forms at all; they are screens within the Yardi system that display the posting detail of each charge and each receipt on the account, including the charges to which each payment was applied. The Landlord Defendants will produce the posting detail for every charge and receipt on Plaintiff's account from February 2014 to date, together with the unpaid charges ledger. The two monthly arrears letters are system-generated form notices. Plaintiff's attorneys state that Plaintiff has "independently confirmed" receiving them, so Plaintiff's own records are the best source for them, but the Landlord Defendants will produce them as well.

In regard to work orders, Plaintiff's attorneys have never explained their relevance.

The Amended Complaint pleads no claim for breach of the warranty of habitability and contains no allegation that any repair was requested and refused. Rather, the Amended Complaint concerns the billing of use and occupancy and the 2024 nonpayment proceeding. It is additionally noteworthy that the answer filed in the 2024 nonpayment case did not raise any warranty of habitability defense or counterclaim. Plaintiff's argument that the absence of work orders is itself relevant "because it calls into question the adequacy and completion of the productions overall" is circular as a party cannot demand documents that bear on no claim and then cite their absence as proof that the production is deficient. Nonetheless, to put an end to the issue, the Landlord Defendants will produce all work orders on file for the subject premises.

Plaintiff's attorneys' assertion that the Landlord Defendants "could not collect this debt as the

statute of limitations had expired," citing CPLR 213(2), misstates the law. A statute of limitations bars the commencement of an action to recover a debt; it does not extinguish the debt or render it not owed. The posting detail that the Landlord Defendants will produce shows exactly what Ms. Seepersad described, and nothing improper.

Finally, Plaintiff's attorneys state that the Landlord Defendants expect the Court to be "satisfied

by 'assurances'" that all relevant documents have been produced. The Landlord Defendants expect nothing of the kind; they have identified above each category Plaintiff's attorneys raise and what will be produced in response to it, and they remain willing to conduct any further search Plaintiff's attorneys reasonably identify.

As set forth in Plaintiff's position section, the undersigned attorney for the Landlord Defendants asked for Plaintiff to appear for a deposition so that Landlord Defendants can file a motion for summary judgment and put an end to this baseless lawsuit. As proof thereof, the undersigned attorney for the Landlord Defendants sent the attached letter dated September 29, 2026 to no less than 5 attorneys representing Plaintiff. The letter sets forth in detail why Plaintiff's claims have no legal basis. Specifically, the letter explains that the Amended Complaint fails to state a cause

of action and rests on misstatements of material fact, chief among them the assertion that Plaintiff owed no use and occupancy for the period from 2014 through 2023. Importantly, the letter ended with an invitation to each of these 5 attorneys to refute the law set forth in the letter. To date, that invitation has gone ignored. Plaintiff's attorneys state "Plaintiff has not felt it necessary to respond or engage in extra-judicial legal briefing that is more appropriately left for motion practice after the close of discovery. Nor does she have any obligation to do so." is patently without merit. It is more than common for attorneys seeking to resolve a lawsuit to set forth their legal authority in support of their clients' position in the hope of early resolution, one way or the other. It is not unwarranted to ponder whether Plaintiff's strategy is to seek baseless discovery abuse sanctions in order to succeed on her baseless claims. Otherwise, the Landlord Defendants ask the Court to order Plaintiff's attorneys to advise as to dates Plaintiff is available to appear for her deposition in the U.S. courthouse. The request for Plaintiff to appear in the courthouse is because the undersigned attorney for the Landlord Defendants anticipates the need for much judicial intervention at Plaintiff's deposition.

Two further points. Plaintiff's statement that she has "laid out the actual and legal basis of her

damages extensively in her initial disclosures, supported by legal authority that the Defendants do not challenge" is untrue. As the Attorney Defendants note, Plaintiff has yet to attach a dollar figure to any category of her claimed damages, and the Landlord Defendants' September 29, 2026 letter challenges the legal basis of every one of them. Also, Plaintiff offers no basis for her request that the Court direct "insurance adjusters" for Defendants to attend any mediation as the Landlord Defendants oppose that request. The Landlord Defendants do not oppose a referral to mediation, but a mediation can only be productive if Plaintiff first states what she contends she is owed.

**Attorney Defendants' Position**

Plaintiff's attacks on the Attorney Defendants are entirely unjustified.

First, though Plaintiff claims to be "concerned about *Defendants'* engagement with the discovery process," (emphasis added), no document discovery is outstanding from the Attorney Defendants. Plaintiff's counsel admitted as much during the September 2, 2026 conference. Indeed, it was Plaintiff — not the Attorney Defendants — who was found to have unjustifiably withheld document discovery when counsel last appeared before this Court.

The Attorney Defendants have reviewed the privilege log produced by Plaintiff pursuant to this Court's September 2, 2026 order and believe that at least some of the communications

listed therein are subject to at-issue waiver or others may not be privileged at all.[3] In the interest of efficiency, however, the Attorney Defendants will defer that potential discovery fight until after Plaintiff is deposed so that the parties and the Court have the benefit of a fuller record.

Second, with respect to depositions, the Attorney Defendants have been cooperative. As Plaintiff notes, almost as an afterthought, Mr. Cullen had been unavailable due to a medical issue requiring surgery. His deposition has since been scheduled for November 17, 2026. In the meantime, counsel for the Attorney Defendants has consistently rescheduled other matters to accommodate Plaintiff's multiple and often redundant depositions of the Landlord Defendants' witnesses.

Ironically, it is Plaintiff who has failed to provide any available dates for her deposition. The Attorney Defendants take no position on the Landlord Defendants' demand for Plaintiff to be produced at the courthouse, but agree that an in-person depoisition may be necessary.

Finally, Plaintiff's request for a referral to the Mediation Program rings hollow. The Attorney Defendants have repeatedly sought a settlement demand from Plaintiff to no avail, most recently on September 22, 2026. In fact, Plaintiff has yet to attach even an estimated dollar figure to any category of her claimed damages. It is difficult to see how such obfuscation benefits anyone other than Plaintiff's attorneys in a fee-shifting case. It certainly does nothing to help Plaintiff herself.[4]

The Attorney Defendants welcome the opportunity to participate in a settlement conference before this Court. Moreover, given Plaintiff's professed desire to mediate, the Attorney Defendants respectfully request that the Court direct Plaintiff to convey a settlement demand to the Defendants within one week.

Respectfully,
/s/
Ahmad Keshavarz

---

[3] As we had suspected, the privilege log confirmed that Plaintiff was in continuous communication with Brooklyn Legal Services ("BLS") and *de facto* represented BLS by throughout the period Plaintiff claimed to have been *pro se*.

[4] Plaintiff implies that no settlement demand has been made because Defendants might later reveal it "in opposition to a fee petition." If Plaintiff's hypothetical settlement demand is so irrational that her counsel fears its disclosure would cause them embarrassment or worse, then Plaintiff's vision for mediation can hardly be characterized as "a reasonable path forward to the resolution Defendants claim they want."